580 P.2d 1210

Francisco M. CRUZ and Delores Cruz, husband and wife, Bernard and Dorothy Louk, a single man and a single woman, and Fred Pugh, a single man, James A. Seamon and Deborah Seamon, husband and wife, Robert N. Kell and Betsy Kell, husband and wife, Appellants,

v.

LUSK COLLECTION AGENCY, an Arizona Corporation, Doctors Business Bureau, an Arizona Corporation, and American Creditors Bureau, an Arizona Corporation, Appellees.

No. 2 CA–CIV 2687.

Court of Appeals of Arizona, Division 2.

March 30, 1978.

Rehearing Denied May 2, 1978.

Review Denied June 6, 1978.

Southern Arizona Legal Aid, Inc. by John G. Balentine and Phillip R. Morgan, Tucson, for appellants.

Barry M. Corey, Tucson, for appellees.

Ronald W. Sommer, Tucson, for amicus curiae State Bar of Arizona.

## OPINION

HOWARD, Judge.

The issue in this appeal is whether appellees are proscribed from bringing suit on the grounds that they are not the real parties in interest and are not authorized to practice law in the State of Arizona.

The instant case commenced with a complaint for declaratory relief filed in the superior court on August 20, 1976, by appellants Cruz to set aside a default judgment taken against them on October 16, 1975 by appellee Lusk Collection Agency. The default judgment had been entered in the justice court based on a claim against the Cruzes which had been assigned by a local merchant to Lusk.

After Lusk filed a motion to dismiss the Cruz complaint for failure to state a claim upon which relief could be granted, the trial court ordered that two pending suits which had been transferred from the justice court to the superior court be consolidated with the case of *Cruz v. Lusk*. Those suits, *Doctors Business Bureau v. Seamon* and *American Creditors Bureau v. Kell* were actions in which the collection agencies were suing on assignments from Tucson Medical Center and Sloan Personnel, respectively. The debtors, Seamon and Kell, had counterclaimed for declaratory and injunctive relief.

The original complaint in *Cruz v. Lusk* was then amended to include as additional plaintiffs, Bernard and Dorothy Louk and Fred Pugh. The Louks had also been sued by Lusk in justice court based on an assignment from Tucson Medical Center to Lusk. Pugh had not been sued by Lusk but had been threatened that if payment was not made within a certain time, suit would be filed by Lusk on an account assigned by Mountain States Telephone & Telegraph Company.

The court ordered that the motion to dismiss was deemed directed to the amended complaint in *Cruz v. Lusk* and to the counterclaims in the *Seamon* and *Kell* cases and dismissed the complaint and respective counterclaims.

The "Assignment and Verification" which was utilized for the assignment of the accounts owed by each of the appellants is a standard form assignment with blanks for the name of the collection agency, the nature of the claim, the name of the creditor, and the name of the debtor.

The "Assignment and Verification" form provides:

"That for legal consideration, the undersigned hereby sell(s), assign(s), transfer(s) unto [name of collection agency] that certain [nature of claim] owed to [name of creditor] by [name of debtor] and do hereby authorize said assignee to bring action in the name of the undersigned or its own name and do any and all things necessary to enforce collection or effect a compromise settlement, if in said assignees' opinion such action or compromise is prudent.

That the attached claim is, within the knowledge of the affiant, just and true, that it is due, and that all just and lawful offsets, payment and credits have been allowed, and assignor agrees to furnish competent testimony and evidence to prove said claim or any part thereof when requested by said assignee or its attorneys."

Appellants do not claim that these forms were not properly completed as to each.

The appellants and counterclaimants alleged the following facts which are deemed to be true for the purposes of a motion to dismiss: (1) No consideration for the alleged assignment passes from the collection agency to the owner of the claim except for the efforts of the collection agency to collect such account prior to instituting suit; (2) the collection agency employs attorneys to institute suit on said accounts in its own

name; (3) the attorneys employed by the collection agency represent the collection agency in the suit instituted on such accounts and do not represent the assignor; (4) the collection agency pays in advance all costs of litigation on such accounts; (5) the collection agency has complete discretion in determining whether or not to institute a suit on such accounts; (6) the collection agency receives from the assignor an agreed-upon percentage of any recovery from such suits as a commission or fee; (7) the attorneys employed by the collection agency to prosecute such actions receive a percentage of the collection agency's share of the recovery plus any attorney's fees awarded; and (8) the collection agency, by the terms of the agreement entered into with the owner of the claim, is required to remit an agreed-upon percentage of the recovery from such suits to the owners.

■ Appellants contend that appellees could not bring suit on the assignment because they were not the real parties in interest under Rule 17(a), Arizona Rules of Civil Procedure. Intertwined with this argument is the contention that the assignments were based upon unlawful subject matter and were therefore void.

Rule 17(a), Arizona Rules of Civil Procedure, states:

"Real party in interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute of the state so provides, an action for the use or benefit of another shall be brought in the name of the State of Arizona. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratifica-tion of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

The purpose of Rule 17(a) is to enable the defendant to avail himself of the evidence and defenses that he has against the real party in interest and to assure the finality of the results in the application of res judicata. See, State Bar Committee Note to Rule 17(a), Arizona Rules of Civil Procedure; *Celanese Corp. of America v. John Clark Industries, Inc.*, 214 F.2d 551 (5th Cir. 1954); 6 Federal Practice and Procedure, Sec. 1541, pp. 635–636.

■ In *Certified Collectors, Inc. v. Lesnick*, 116 Ariz. 601, 570 P.2d 769 (1977) the court recognized, as being the general rule, the well-settled proposition that a valid assignee of a chose in action may bring a suit thereon in his own name. The court further stated that the assignee need not be the full party in interest and that the debtor or alleged obligor is not prejudiced because by statute, A.R.S. Sec. 44–144, he may assert his defenses as fully against the assignee as he could against the original claimant.

The court, however, declined to pass on the issue of whether the assignment of a chose in action for collection was valid and entitled the assignee to bring suit on the claim in his own name as the real party in interest, even where the assignment was partial and the assignor retained an interest in the proceeds recovered.

■ We believe that since 1896 the law in this state has been that the assignee of an account for collection can sue in his own name. In *Sroufe v. Soto Bros. & Co.*, 5 Ariz. 10, 43 P. 221 (1896), a case involving the assignment of an account for collection, the court stated:

". . . Though it was in fact understood by the parties that the beneficial

interests to pass by the assignment were limited, still the plaintiffs, as holders of the legal title of said accounts, could sue for and recover the whole amount thereof." 5 Ariz. at 12, 43 P. at 221.

In *Mosher v. Bellas*, 33 Ariz. 147, 264 P. 468 (1928), a case also involving the assignment of a chose in action for collection, the court stated:

"It cannot be questioned that the assignee of a chose in action is, under the law, the legal owner of it and as such entitled to sue for its collection." 33 Ariz. at 151, 264 P. at 469.

The real party in interest statute which was in effect when the *Sroufe* case was decided, Revised Statutes of Arizona (1887) ¶ 680 as amended in 1893, provided:

"Every action shall be prosecuted in the name of the real party in interest, provided, an executor of administrator, or a trustee of an express trust, or a person expressly authorized by the statute, may sue without joining with him the person for whose benefit the action is brought. A person with whom or in whose name a contract for the benefit of another is made, *and the assignee of any chose in action is a trustee of an express trust, within the meaning of this section.*" (Emphasis added)

The foregoing emphasized language was retained until 1939 when it was omitted from Sec. 21–501, Arizona Code (1939). We do not believe the omission worked any change in the law. The holding of the *Sroufe* case made the omitted language redundant. The federal courts have held that if an assignee, for the purposes of collection, holds legal title to the debts according to the governing substantive law, he is the real party in interest even though he must account to his assignor for whatever is recovered in the action. 6 Federal Practice and Procedure, Sec. 1545.

■ We conclude that if there was a valid assignment here, appellees were the real parties in interest under Rule 17(a), Arizona Rules of Civil Procedure, and therefore could sue in their own names.

In *Certified Collectors, Inc. v. Lesnick,* supra, the court stated:

". . . Moreover, an assignment is subject to the same requisites for validity as are other contracts, i. e., mutuality of assent, proper parties with the capacity to make a contract, consideration and *legal subject-matter. . . .*" (Emphasis added) 570 P.2d at 771.

Appellants contend that the subject matter of the assignment was illegal because it authorized appellees to practice law without a license. A comprehensive annotation on the subject "Operations of Collection Agency As Unauthorized Practice of Law" is contained in 27 A.L.R.3d 1152 et seq. Appellants have cited to us many cases collected in the annotation to support their proposition. We do not find these cases apposite. Collection agencies in this state are governed by comprehensive statutes. See A.R.S. Sec. 32–1001 et seq. A collection agency must be licensed by the state and have furnished the Secretary of State a financial statement and bond. A.R.S. Secs. 32–1021 and 32–1022. Minimum qualifications are required under A.R.S. Sec. 32–1023. The license must be renewed each year and accompanied by a financial statement. A.R.S. Sec. 32–1025. A.R.S. Sec. 32–1052 authorizes the examination by the Secretary of State of the licensee's records.

■ Examination of the applicable statutes leads us to the conclusion that the legislature has given the collection agencies the power to take assignments of accounts for collection for the purpose of filing suit when necessary in their own names. A.R.S. Sec. 32–1051 states in part:

"An individual, firm, partnership, association or corporation to whom a license is to be issued under this chapter shall:

\*        \*        \*        \*        \*        \*

5. Not attempt to collect any collection fee, attorney's fee, court cost or expenses unless such fees, charges or expenses are justly due from and legally chargeable against the debtor, or have been judicially determined . . . .."

A.R.S. Sec. 32–1055 enumerates the acts which constitute unlawful conduct on the part of a collection agency. Nowhere does the statute state that an agency cannot take an account for the purpose of filing suit if necessary and, in fact, actually file suit in its own name.

■ We also note that the rules and regulations promulgated by the Secretary of State have interpreted the statutes as allowing the collection agencies to file suit.[1] Rule 4–8–05, Secretary of State Administrative Rules and Regulations prior to April 4, 1977, states in part:

"Every licensee shall: . . . (2) maintain a record and history of each claim or account for collection which shall clearly show: . . . (d) any attorney's fee or court costs charged or collected."

Rule 4–8–11 states in part:

". . . A collection agency shall not file a lawsuit against a debtor unless such lawsuit is filed by an attorney who has no personal or financial interest in that collection agency."

California, the source for part of our statutes on collection agencies, has faced the problem at hand and resolved it in a manner which we believe is based on sound reasoning. In *Cohn v. Thompson*, 128 Cal. App.Supp. 783, 16 P.2d 364 (1932) the court stated:

"The assignee merely contracts to file suit in his own name, if necessary to make the collection. But he does not agree to furnish any legal services whatever to the assignor. The assignee employs the attorney and controls his action. No legal services are performed for the assignor. The only duty of the assignee is to account to the assignor after the collection has been made. In making the agreement to bring suit, the assignee merely agrees to do that which he can legally do without any agreement, by virtue of the assignment. Provided the as-signment is absolute, so as to vest the apparent legal title in the assignee, the latter is entitled to sue in his own name * * *.

. . . In the case now before us . . we find that the plaintiff was not practicing law within the meaning of the foregoing definition. Certainly the plaintiff did not agree to furnish to his assignor legal advice or counsel, nor to prepare legal instruments, or contracts. Neither did the plaintiff agree to do or perform services in a court of justice for the assignor or to employ an attorney to perform such services for the assignor. The services performed by the attorney were for the assignee alone, who was the real party in interest and exercised entire control of the action; the assignor having no power to exercise any control whatsoever either over the action or the attorney in the performance of his services." 16 P.2d at 365.

The viability of *Cohn v. Thompson*, supra, was recognized by the court in *Le Doux v. Credit Research Corporation*, 52 Cal.App.3d 451, 125 Cal.Rptr. 166 (1975). There the court referred to a law review note which we believe is appropriate to this case. The author of Note, The Real Party In Interest Rule Revitalized; Recognizing Defendant's Interest In the Determination of Proper Parties Plaintiff, 55 Cal.L.Rev. 1452, 1476–77, was quoted by the *Le Doux* court:

" 'Commercial necessity is the primary justification for allowing suits by assignees for collection only. Refusal to permit such parties to sue results in unnecessary economic waste. If assignees for collection only were not permitted to sue, merchants might be forced to decide between abandoning their enterprises while suing on delinquent accounts, or abandoning their delinquent accounts. Neither choice produces socially desirable results.

' * * *.

---

1. Pursuant to A.R.S. Sec. 32–1002 the Secretary of State has the duty to promulgate regulations governing collection agencies.

'* * * The policy reasons for requiring that suits be prosecuted by beneficially interested parties are highly abstract. They reflect value judgments regarding fairness. Against such intangible judgments must be weighed the probability that tangible economic waste will follow from refusal to allow assignees for collection only status to sue. In small cases the threat of tangible harm seems far more compelling than the intangible feeling that suits should be prosecuted by the beneficially interested party.' (Footnotes omitted.)" 125 Cal.Rptr. at 169.

We do not believe that the appellees engaged in the unauthorized practice of law. They were acting within the powers authorized by the Arizona State Legislature.

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.