965 P.2d 82

**JOEL ERIK THOMPSON, LTD., an Arizona professional corporation, Plaintiff–Appellant,**

v.

**William HOLDER and Jane Doe Holder, husband and wife; Dennis J. Skarecky and Jane Doe Skarecky, husband and wife; Skarecky, Cales & Holder, P.A., a professional association, Defendants–Appellees.**

No. 1 CA–CV 97–0616A.

Court of Appeals of Arizona, Division 1, Department B.

July 17, 1998.

As Amended July 22, 1998.

Joel Erik Thompson, Phoenix, for Plaintiff–Appellant.

Skarecky, Cales & Holder, P.A. by Dennis Skarecky and William W. Holder, Phoenix, for Defendants–Appellees.

**OPINION**

FIDEL, Presiding Judge.

¶ 1 When legal malpractice occurs in the course of litigation, the malpractice claim does not accrue, and the statute of limitations does not start to run, until the appellate process in the underlying litigation is "completed or is waived by a failure to appeal." *Amfac Distribution Corp. v. Miller,* 138 Ariz. 152, 154, 673 P.2d 792, 794 (1983). But when is the appellate process completed in an appeal finally resolved by the court of appeals

without a petition for supreme court review? Is it completed when the deadline passes for filing a petition for review, or not until the court of appeals issues its mandate bringing the appeal to a formal, final end? On that margin, here a matter of four days, turns compliance with the statute of limitations in this case.

¶ 2 We hold that the mandate establishes the completion of the appellate process and that the trial court, which used the earlier date, erred in entering summary judgment for Defendants on statute-of-limitations grounds. We uphold summary judgment, however, upon the independent basis that the parties had no attorney-client relationship.

### HISTORY

¶ 3 Plaintiff Joel Erik Thompson, Ltd.[1] assigned a collection matter concerning an unpaid client fee to Transworld Systems, Inc., dba Credit Management Services ("CMS"). Plaintiff's agreement with CMS authorized CMS to "sue, settle or adjust any claims as may be necessary." As assignee, CMS was entitled to do so in its own name. CMS retained the Defendant law firm, Skarecky, Cales & Holder ("SCH"), to handle the collection. Plaintiff retained a 50% contingency interest in whatever recovery SCH might achieve for CMS.

¶ 4 SCH brought suit on behalf of CMS against Plaintiff's former clients, the Powerses, whose answer included a third-party complaint against Plaintiff alleging that, contrary to owing him any further fee, they should be refunded a sum that they had overpaid. Plaintiff filed his own answer to the third-party complaint, having been advised by SCH that CMS did not authorize that firm to do so on his behalf.

¶ 5 The lawsuit was set for arbitration. Before the hearing, Plaintiff advised William Holder, an attorney with SCH, that he had suffered a heart attack and must move to continue the arbitration. Holder responded that he and CMS preferred to proceed with the hearing as scheduled, at which, as CMS and Plaintiff had common positions on disputed matters, Holder could "handle everything." Relying upon that representation, Plaintiff did not move to continue. Though he ultimately attended the arbitration, he deferred to Holder to prepare for and conduct it.

¶ 6 The Powerses presented expert testimony at arbitration concerning the unreasonableness of Plaintiff's fee, and CMS presented none to counter. Nonetheless, the arbitrator ruled in favor of CMS in the amount of $4,587.35, plus interest, and dismissed the third-party complaint against Plaintiff. After the hearing, anticipating that the Powerses would appeal and seek a trial de novo in superior court, Plaintiff asked Holder to present expert testimony to support the reasonableness of the fee if the case went to trial.

¶ 7 When the Powerses did appeal, Plaintiff phoned Holder and named two attorneys who would testify as experts regarding the reasonableness of the unpaid fee. By then, however, the deadline for listing additional witnesses had passed. Holder decided not to attempt to secure the testimony of Plaintiff's experts by filing an untimely list of supplementary witnesses, but instead by arguing that Plaintiff's experts, though unlisted by name, had been adequately disclosed in a catch-all pre-arbitration listing of "[a]ll witnesses listed by all other parties." As the Powerses, before the arbitration, had listed "other attorney to testify on the issue of the reasonableness of [Plaintiff's] charges," Holder argued that Plaintiff's experts fell within this category and had been sufficiently disclosed.

¶ 8 The Powerses objected to the proposed testimony of unnamed expert witnesses, and the trial court sustained the objection. Thereafter, the trial court ruled against CMS on the original complaint, awarded the Powerses $1,812.65 in damages on their third-party complaint against Plaintiff, and awarded them attorneys' fees of $2500 and costs of $78.25 against both CMS and Plaintiff.

---

1. For the sake of convenience, we will use the term "Plaintiff" to denote both Joel Erik Thompson individually and Joel Erik Thompson, Ltd., a professional corporation, the actual party to this suit.

¶ 9  The award to the Powerses was reduced to judgment, appealed, and upheld by this court in 1 CA–CV 93–0180. The deadline to petition for review of our decision was September 9, 1994. After the deadline passed with no petition, this court issued its mandate in favor of the Powerses on September 13, 1994.

¶ 10  In the interim, during the pendency of the appeal, SCH filed a separate suit in justice court on behalf of CMS against Plaintiff seeking reimbursement for its expenses in the underlying case. Plaintiff, when served with that lawsuit, objected that SCH's representation of CMS constituted a conflict of interest. In the face of this objection, SCH withdrew from representing CMS. Substituted counsel later provided Plaintiff with copies of correspondence from SCH to CMS recommending and drafting a demand letter to be submitted to Plaintiff.

¶ 11  On September 12, 1996, Plaintiff filed the present action. He initially denominated it as one for "Legal Malpractice," but on October 2, 1996, filed a First Amended Complaint denominated as one for "Legal Malpractice and Breach of Contract." In Counts I and II, Plaintiff alleged that SCH had breached its duty as his representative by failing to timely list his expert witnesses. In Count III, Plaintiff alleged that, when SCH counseled CMS to file suit against him, SCH's actions constituted both a conflict of interest and a breach of contract.

¶ 12  SCH moved for summary judgment on all claims and to dismiss Count III for failure to state a claim. Following hearings, the trial court granted SCH's motions, and Plaintiff filed a timely notice of appeal.

### STATUTE OF LIMITATIONS

¶ 13  The trial court ruled that Plaintiff's three claims were barred by the statute of limitations. To review the validity of this ruling, we must determine whether Plaintiff's cause of action accrued on September 9, 1994, when the deadline passed for filing a petition for review from this court's decision

in the underlying case, or on September 13, 1994, when this court issued its mandate bringing that case to a formal, final end. Assuming a two-year statute of limitations for all counts,[2] if the cause of action accrued on September 9, 1994, Plaintiff filed an untimely complaint on September 12, 1996; if the cause of action accrued on September 13, 1994, Plaintiff's September 12, 1996, complaint was timely.

¶ 14  The parties' arguments turn entirely upon a nuance that emerges from comparison of this court's decision in *Amfac Distribution Corp. v. Miller*, 138 Ariz. 155, 673 P.2d 795 (App.) ("*Amfac I*"), *aff'd*, 138 Ariz. 152, 673 P.2d 792 (1983), with our supreme court's decision approving and supplementing that decision in *Amfac Distribution Corp. v. Miller*, 138 Ariz. 152, 673 P.2d 792 (1983) ("*Amfac II*").

¶ 15  The supreme court held that a legal malpractice claim arising from underlying litigation accrues when the underlying "appellate process is completed or is waived by a failure to appeal." *Amfac II*, 138 Ariz. at 154, 673 P.2d at 794. The court of appeals similarly, but variously, pegged accrual to the moment when the underlying "judgment ... ha[s] become final," when the underlying "litigation is terminated," when "there ha[s] been ... final adjudication," and at "the conclusion of the appellate process." *See Amfac I*, 138 Ariz. at 156, 157, 158, 673 P.2d at 796, 797, 798. As the appellate process is not formally completed, terminated, concluded, or final until the mandate issues, each of these formulations supports Plaintiff's view that his cause of action accrued on September 13, 1994.

¶ 16  SCH seizes upon a different passage from *Amfac I*, however, to support an argument for an earlier accrual date. Specifically, in the course of that decision, to illustrate the proposition that damages remain too speculative to permit a cause of action "[w]here there has been no final adjudication" of the lawsuit underlying a legal malpractice claim, we wrote:

> One court has stated it this way:

**2.** Our determination that a two-year statute of limitations was satisfied makes it unnecessary for us to determine (1) whether Plaintiff was entitled to a three-year statute of limitations for the cause

of action embodied in Count III; and (2) whether he waived, by non-assertion in the trial court, any claim that a three-year statute should apply to Count III.

[N]o cause of action accrued until after the plaintiffs discovered or could reasonably have discovered the malpractice *and until after the judgment ... had become final. The judgment did not become final until the Court of Appeals decided the appeal and the time to appeal to the [state] Supreme Court ... had expired.*

*Id.* at 156, 673 P.2d at 796 (quoting *Woodruff v. Tomlin,* 511 F.2d 1019, 1021 (6th Cir. 1975)). Mistaking this quotation as the ultimate *Amfac* holding, SCH argues that Plaintiff's claim accrued four days before the mandate when his time to petition the supreme court for review expired.

¶ 17 We reject SCH's argument for four reasons. First, SCH stakes its argument upon language that was merely an illustrative quotation, not this court's holding, and certainly not the ultimate holding of the supreme court. Second, both this court and the supreme court have pegged the date of accrual to the termination of the appellate process; the issuance of the mandate both accomplishes and formally signifies that termination. Third, the law might minutely accelerate finality by pegging accrual to the earlier date, but at the cost of setting a trap for the unwary—a trap perfectly illustrated by this case. As the law does not favor statutes of limitations, we decline to achieve so scant a gain—here a matter of four days— at so high a cost. And finally, the issuance of the mandate provides a "bright-line" event to count from; and in counting time, a bright-line rule serves all.

¶ 18 For the foregoing reasons, we hold that Plaintiff's cause of action accrued on September 13, 1994, and that the trial court erred in dismissing his lawsuit on statute-of-limitations grounds.

## ATTORNEY–CLIENT RELATIONSHIP

¶ 19 Plaintiff's claims for legal malpractice and breach of contract were predicated upon the assertion of an attorney-client relationship between Plaintiff and SCH. The trial court ruled for SCH not only on statute-of-limitations grounds, but on the alternative ground that no attorney-client relationship existed.[3]

¶ 20 Plaintiff did not challenge this alternative basis for the trial court's ruling in his opening brief. In his reply brief, however, he asserted without elaboration that he filed an affidavit in the trial court which sufficed to create an issue of material fact concerning a contractual relationship between SCH and himself. Plaintiff's cursory treatment of this issue in a reply brief does not suffice to preserve it for appeal. *See* Ariz. R. Civ.App. P. 13(a)(5) (appellant's opening brief shall contain "[a] statement of the issues presented for review"); *Skousen v. Nidy,* 90 Ariz. 215, 217, 367 P.2d 248, 249 (1961) (a party who fails to present argument or authority to support a claim of error waives that claim); *Carrillo v. State,* 169 Ariz. 126, 132, 817 P.2d 493, 499 (App.1991) ("Issues not clearly raised and argued on appeal are waived."). Moreover, having examined the affidavit in question, we disagree that the trial court overlooked any genuine issue of material fact.

¶ 21 The trial court explained its ruling in its minute entry of September 17, 1997:

[SCH] dealt solely with CMS [in the instant matter] until a counterclaim[4] was filed against CMS and [Plaintiff's] principal. [Plaintiff] represented himself with regard to the counterclaim.

The assignment of [Plaintiff's] claim was total and complete. If Plaintiff had an agreement with anyone, it was of a contingent nature and it was with CMS: that is, to share in any recovery obtained by CMS. There is no evidence of a contract with [SCH]. Nor is there any evidence of a client-attorney relationship with [SCH]. Thus, there was no contractual or relational duty owed [Plaintiff] by [SCH].

---

**3.** Although the trial court described its ruling on Count III as a "summary judgment/dismissal," the trial court considered affidavits and other evidence in ruling on that count, and we therefore treat its ruling as a summary judgment. *See* Ariz. R. Civ. P. 12(b) (If, upon a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....").

**4.** The parties routinely refer to the third-party complaint as a counterclaim, as did the trial court in its minute entry ruling.

¶ 22 Plaintiff's affidavit supported the trial court's finding. There Plaintiff acknowledged that CMS expressly advised him that it did *not* authorize SCH to defend the third-party complaint, and he acknowledged that he "represented himself ... as to the counterclaim." Plaintiff asserted, however, that "he relied upon Mr. Holder's representations and upon SCH to represent [his] 50% interest in the claim set forth in the Complaint." Similarly, in his response to SCH's motion for summary judgment, Plaintiff stated, "It did not require a separate contract between Plaintiff and SCH to establish an attorney-client relationship between them because CMS was acting on behalf of Plaintiff's 50% interest...."

¶ 23 In short, in his presentation to the trial court, Plaintiff attributed an attorney-client relationship with SCH to the fact that he retained a 50% contingency interest in the claim that SCH advanced on behalf of CMS. In *Cruz v. Lusk Collection Agency,* 119 Ariz. 356, 580 P.2d 1210 (App.1978), however, we ruled to the contrary that when a collection agency retains lawyers to pursue an assigned claim, the lawyers represent only the collection agency and not the assignor. *See id.* at 360, 580 P.2d at 1214 (citing *Cohn v. Thompson,* 16 P.2d 364, 365 (Cal.App. Dep't Super. Ct.1932)). We therefore conclude on the basis of *Cruz* that the trial court did not err to find no contractual or attorney-client relationship arising from Plaintiff's retention of a contingency interest in the claim that he assigned to CMS.

¶ 24 Plaintiff alternatively asserted to the trial court that "William Holder of SCH specifically assumed a separate contractual obligation with Plaintiff regarding the counterclaim when he verbally agreed to present Plaintiff's cause if [Plaintiff] would agree not to seek a continuance of the arbitration hearing." Plaintiff failed, however, to argue any basis to the trial court for construing Holder's assurances as a contract and not as a gratuitous undertaking. Nor did he argue to the trial court that Holder or SCH should be held liable for financial losses arising from the negligent performance of a gratuitous undertaking. *Cf.* Restatement (Second) of Torts § 323 (1965) (permitting recovery for physical injury arising from the negligent performance of a gratuitous undertaking). Nor has he argued these issues to any degree before this court. Absent argument or authority, they are waived. *See Skousen,* 90 Ariz. at 217, 367 P.2d at 249.

CONCLUSION

¶ 25 The trial court did not err in granting summary judgment to SCH on Plaintiff's First Amended Complaint. The judgment is affirmed.

EHRLICH and THOMPSON, JJ., concur.