---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

---

**W I N T H R O P**, Judge:

¶1        Joseph Hazlitt ("Father") appeals the superior court's judgment and orders issued between April and July 2020 on cross-petitions to modify (1) legal decision-making and parenting time, and (2) child support.  Father argues the court abused its discretion in ordering that Paula Cordero ("Mother") retain sole legal decision-making for the parties' two minor children, not increasing his parenting time, and awarding attorneys' fees to Mother.  He further argues the court did not fairly consider the evidence and suggests a bias existed in favor of Mother.  For the following reasons, we affirm the court's rulings except for the award of attorneys' fees, which we vacate.

**FACTS AND PROCEDURAL HISTORY**[1]

¶2        In February 2013, Father and Mother married in Tempe. Father worked part-time as a substitute teacher, and Mother was generally unemployed.  The parties' home was "overflowing with possessions and trash" that "resulted in a bug infestation," and the kitchen had "rotting food on the counters and earthworms growing in the filth."[2]  In July 2013, a female child was born to the parties.

¶3        Mother was diagnosed with multiple sclerosis while in high school, but she had remained symptom-free for approximately eighteen years.  In November 2013, she became ill with viral encephalitis, which triggered her multiple sclerosis, and she was hospitalized for eighteen days. While in the hospital, Mother learned she was pregnant with the parties' second child.  Upon her release from the hospital in December 2013, Mother

---

[1]        We view the facts and reasonable inferences therefrom in the light most favorable to sustaining the superior court's rulings. *Day v. Day*, 20 Ariz. App. 472, 473 (1973).

[2]        Mother blamed Father for these deplorable living conditions.

was taken by her parents ("the maternal grandparents") to their home in Cottonwood, where she and the parties' first child began living.

¶4 In January 2014, Mother obtained an order of protection against Father, claiming he had assaulted and "strangled" her on multiple occasions and had also "smothered our babies [sic] mouth + nose to cut off her breathing."[3] Shortly thereafter, in February 2014, Mother petitioned for dissolution of the parties' marriage in Yavapai County Superior Court.

¶5 Mother and the maternal grandparents then sought to prevent or at least severely limit Father's interaction with the parties' child (later children) based on the allegations in the order of protection. Father denied the allegations and argued Mother was using the order of protection as a "tool" to gain leverage in the divorce proceedings. In May 2014, the superior court issued temporary orders on stipulation of the parties amending the order of protection to allow Father one two-hour visit per week with the child to be supervised by the maternal grandfather. In July 2014, the parties' second child, a boy, was born.

¶6 Before trial, legal decision-making and parenting time were a constant source of contention between the parties. Mother continued to rely on her previous allegations against Father, claimed Father "has mental health issues which prevent him from co-parenting with Mother," and requested that Father submit to a psychological evaluation. Father argued Mother was unable to care for the children due to her increasing physical limitations caused by the multiple sclerosis, and that although the maternal grandparents were assuming much of the children's care, they also had increasing physical limitations, including that the maternal grandmother was "disabled and constantly on pain medication."

¶7 In September 2014, the superior court assigned a court-appointed advisor ("CAA") to interview the parties, investigate the parties' homes,[4] and make recommendations regarding legal decision-making and

---

[3] Mother had not previously documented any alleged abuse, disclosed any incidents to friends or family members, or filed a report with the police. As to her allegation regarding the child, Mother explained it was based on an incident in which Father placed a blanket over part of the child's face, and the "[m]aternal grandfather had to uncover the child's face so [s]he could breathe properly."

[4] Although the CAA visited Father's residence, she did not perform a home visit on Mother's (the maternal grandparents') residence.

3

parenting time. During her interview, Mother, who was by that time confined to a wheelchair, struggled to communicate and relied on the maternal grandfather to speak about the case. Both Mother and the maternal grandfather acknowledged Mother could not care for herself, much less her children, without assistance. In her March 2015 report, the CAA concluded, "Mother has physical and cognitive impairments that limit her ability to care for the children." As to Father, the CAA concluded she had not been "provided with sufficient information to believe Father is a danger to the children," although she noted Father's admitted history of anxiety, poor cleaning habits, and apparent proclivity toward hoarding. Based on Mother's allegations, the overriding concern for the children's welfare, and her conclusion that "Father may have untreated mental illness that impacts his ability to adequately care for the children and provide them with a safe environment," the CAA recommended Father submit to a psychiatric evaluation and his parenting time remain supervised until he could be "assessed by a professional."

¶8         In May 2015, Father moved for expedited temporary orders seeking increased legal decision-making authority and parenting time. Father argued that although the order of protection had expired in January 2015, Mother and the maternal grandparents refused to allow him access to the children.

¶9         In July 2015, the court held a hearing on Father's motion for temporary orders. By this time, Father had submitted to a psychological evaluation, and the evaluation report was admitted into evidence at the hearing. The court increased Father's parenting time to three to five hours per week and ordered that the parties share joint legal decision-making, with Mother having the final authority.

¶10         In December 2015, the court appointed a new CAA and assessed all costs of the CAA to Father.[5] The second CAA reviewed numerous reports and records and interviewed both parties, Father's adult child from a previous marriage, the maternal grandfather, and a former parenting-time supervisor.

¶11         In January 2016, the CAA filed a report, noting Father's house was very cold and dirty, smelled musty and moldy, and the floor "was clearly not something a small child should be permitted to crawl or sit on."

---

[5]         The first CAA had been appointed after the case was briefly transferred to the Maricopa County Superior Court. The case was transferred back to the Yavapai County Superior Court in March 2015.

The only heat in the home was a single electric unit in one room, "and it appeared that there were few functional light fixtures in the house." Additionally, there were numerous child safety issues, including things piled up in the home "that looked unsafe to have around small children because they were sharp or small and could be easily swallowed." The overall condition of the property's yard, which had many vehicles and other types of machinery on it, "presented conditions that were very unsafe for small children" and "gave the property a trashy appearance." An attached letter from a supervised visitation "monitor" also indicated concerns with Father's poor safety habits and decision making, "physical roughness with the children," and provision of "unusual play[ ]toys such as a small metal pronged garden tool and a hardball." Mother, who had been taking speech and physical therapy, was by the time of her interview fully able to speak and walk a few feet with assistance. She described Father as "very controlling" and physically, verbally, and emotionally abusive. The CAA set forth numerous recommendations, including that (1) the court deny any request by Father for unsupervised parenting time, (2) Mother have sole legal decision-making authority over the children, (3) Father receive two two-hour periods of supervised parenting time per week and pay all costs of supervision, (4) Father complete a parenting skills class, and (5) Father receive individual counseling to address "what may be long[-]standing psychological issues."

**¶12** Later that month, the superior court held a trial on the petition for dissolution. After taking the matter under advisement, the court issued its order terminating the parties' marriage on March 30, 2016. The court found that although "Mother has multiple sclerosis and other health issues[, s]he is able to provide care for the children with the help of the grandparents. Her medical conditions do not interfere with her ability to interact or interrelate with the children in any meaningful way." As to Father, the court found he had "exhibited behaviors that suggest he may have mental health issues for which he should consider addressing. The court advisors' reports, which the court incorporates by reference, set forth these concerns . . . ." The court also found that "Father's future relationship with the children depends upon his commitment to improving his parenting skills and addressing issues in his life, as discussed in greater detail in the court advisors' reports." The court awarded Mother sole legal decision-making authority over the children and ordered that Father receive three to four hours per week of supervised parenting time. The court also ordered that Father pay for the parenting supervisor and pay $175.00 per month in child support.

**¶13** In May 2017, Mother twice petitioned for an order of protection, alleging Father was a danger to the children, but each time the petition was denied. That same month, Father petitioned to modify legal decision-making and parenting time. Father argued both the psychological evaluation and counseling he had briefly attended indicated he had "no mental illness," he had completed "over thirty hours of parenting classes," and his home was clean and appropriate for children. He further alleged he had missed visits and was having difficulty finding supervisors for visitation because Mother and the maternal grandparents had "caus[ed] supervisors to quit due to harass[ment]."

**¶14** After a hearing on the petition, the superior court took the matter under advisement before denying the petition in November 2017. Although the court found "Mother or persons acting on behalf of Mother have restricted Father's parenting time beyond the ordered parenting plan," and that Father had nonetheless "diligently worked at trying to maintain contact," the court also found as follows:

> The court does not find that the reasons for supervised parenting time have subsided to a point where it is no longer necessary, but that some changes should be implemented to see that parenting time is more regular. Father's future relationship with the children will depend on him addressing his own actions (as discussed in the decree and the 2016 court advisor's report), as well as Mother and [the] maternal grandparents changing their attitude and actions towards Father.

The court admonished Mother and/or the maternal grandparents for numerous unwarranted and negative actions toward Father—including contacting the Cottonwood Police Department to restrict further or prevent Father's visitation, referring and teaching the children to refer to Father by derogatory names, and harassing and berating a fact witness at a supervised visit—finding them "not acceptable." Additionally, the court ordered that Mother "enroll the children in counseling for the purpose of reunification therapy for the children and Father," with uncovered costs to be apportioned sixty percent to Father and forty percent to Mother.

**¶15** In May 2018, Father again petitioned to modify legal decision-making and parenting time, alleging the maternal grandparents were "in reality raising my children" and continued to "use every opportunity to slander and malign me." Father also petitioned to enforce his parenting time.

6

**¶16** After a two-day trial, the superior court issued an under advisement ruling in March 2019. The court made detailed findings regarding the children's best interests pursuant to Arizona Revised Statutes ("A.R.S.") sections 25-403(A) and -403.01(B). In part, the court noted, "Father accepts no responsibility for the fact that he has supervised parenting time other than his belief that he made a poor choice in the [May 2014 supervised parenting] agreement. That belief is unfortunate and a large part of the reason why it has taken nearly five years to get to this point." The court also recognized the continued animosity between the parties, Mother's failure to notify Father regarding the children's medical issues, inappropriate emails from Father to Mother, and the fact that the children were "acting out" toward Father, including insulting him, saying inappropriate things, and the younger child hitting and spitting at Father. The court noted, "It is more likely than not that these acts are a result of the children's home environment than from Father's few hours a week of supervised parenting time." The court denied Father's request for joint legal decision-making and to enforce parenting time but modified Father's parenting time to unsupervised parenting time five hours per week. The court also ordered that Mother, Father, and the children continue with reunification therapy and counseling and that "[s]ince the children are now acting out towards Father and responding to cues from Mother's household that influence the children's view of Father, the children are now in need of their own counseling." The court ordered that the costs of such counseling not covered by insurance be paid sixty percent by Father and forty percent by Mother.

**¶17** In July 2019, Father again petitioned the court to modify legal decision-making and parenting time, arguing the maternal grandparents were alienating him from the children and interfering with visitation because they had "made up lies of false [sexual] abuse" that had led to intervention by law enforcement authorities and the Arizona Department of Child Safety ("DCS"). Mother filed a response and cross-petition to modify child support. The court held separate trials on the petitions.

**¶18** The court took the matters under advisement. Before the court issued its ruling, Father moved to submit "new" evidence of a DCS investigation and report finding "unsubstantiated" claims that he had physically and sexually abused and neglected the children since they began unsupervised parenting time and that DCS had closed the case after its investigation, indicating it believed a "false report" had been filed. Mother argued the DCS report did not constitute newly discovered material evidence because Father could have discovered and produced it at trial with reasonable diligence and the report simply contained DCS'

7

"investigation which concluded that the allegations against [Father] were unsubstantiated—an acknowledgement that was made at the trial."

**¶19** The court issued a ruling in April 2020, denying Father's petition and increasing monthly child support to $414.00. The court adopted its previous March 2019 findings made under A.R.S. §§ 25-403(A) and -403.01(B) after concluding those findings were still applicable. The court also awarded attorneys' fees and costs to Mother after finding no substantial disparity between the parties' finances and that "Father's petition was not grounded in fact or based in law." *See* A.R.S. § 25-324(B)(2).

**¶20** After issuing its under advisement ruling, the court denied Father's motion to submit new evidence, noting that "in its ruling, the court did not find that child abuse occurred," and therefore, Father could not show the evidence would change the court's findings. In June 2020, the court issued an order and judgment awarding attorneys' fees of $8,520.00 and costs of $301.71, for a total award of $8,821.71 to Mother.

**¶21** We have jurisdiction over Father's timely appeal. *See* A.R.S. § 12-2101(A)(2).

## ANALYSIS

### I. Standard of Review and Applicable Law

**¶22** We will affirm if substantial evidence supports the court's decision, *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009), and will not substitute our opinion for that of the superior court unless there has been a clear abuse of discretion, *Deatherage v. Deatherage*, 140 Ariz. 317, 319 (App. 1984). Further, we will not set aside findings of fact unless they are clearly erroneous. Ariz. R. Fam. Law P. 82(a)(5). We defer to the superior court's credibility determinations, and to the extent the court based its rulings on the weight it gave conflicting evidence, we defer to the court's judgment. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347-48, ¶ 13 (App. 1998); Ariz. R. Fam. Law P. 82(a)(5).

### II. Father's Opening Brief

**¶23** Mother argues Father's opening brief "is illegible, difficult to comprehend and includes references to documents that were not admitted into evidence at Trial." Further, without providing specificity, she argues some of the arguments raised in Father's opening brief appear to be beyond the scope of his notice of appeal, and she maintains Father's "Statement of

Facts" is incorrect, contains hearsay statements not supported by the record, and lacks appropriate references.

**¶24**        We agree that Father's opening brief does not comply with the Arizona Rules of Civil Appellate Procedure. His brief fails to cite to the record correctly and contains factual assertions for which there is no apparent record support.[6] An appellant's brief must contain a statement of facts with appropriate references to the record. ARCAP 13(a)(5). If not, this court may disregard it. *See Flood Control Dist. of Maricopa Cnty. v. Conlin*, 148 Ariz. 66, 68 (App. 1985). Also, bald assertions without proper citation are generally insufficient to preserve issues for review. *See Joel Erik Thompson, Ltd. v. Holder*, 192 Ariz. 348, 351, ¶ 20 (App. 1998); *AMERCO v. Shoen*, 184 Ariz. 150, 154 n.4 (App. 1995); *Prairie State Bank v. I.R.S.*, 155 Ariz. 219, 221 n.1A (App. 1987). Nonetheless, although Father's opening brief is grossly deficient, Mother's answering brief is not much better, as it does little to correct or clarify Father's errors or provide facts sufficient to put the appeal and Father's arguments in context. *See* ARCAP 13(b)(1). Also, a party's argument must contain citations to relevant legal authorities, supporting reasons for each contention, and appropriate references to portions of the record on which the party relies. *See* ARCAP 13(a)(7)(A)-(B), (b)(1). Here, both sides' citation to legal authorities is woefully deficient. The failure to comply with ARCAP 13 can constitute a waiver of the arguments made. *See Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009). Nonetheless, we decline to reject summarily Father's appeal on this basis. *See Clemens v. Clark*, 101 Ariz. 413, 414 (1966); *Lederman v. Phelps Dodge Corp.*, 19 Ariz. App. 107, 108 (1973).

### III.        *Legal Decision-Making and Parenting Time*

**¶25**        Father argues the superior court erred in ordering that Mother retain legal decision-making authority and in declining to increase his parenting time. On this record, we disagree.

**¶26**        We review for an abuse of discretion the superior court's legal decision-making and parenting time orders. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018); *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013). In deciding legal decision-making and parenting time, courts must

---

[6]        Also, Father has failed to provide transcripts of the trials on the petition to modify legal decision-making and parenting time and the cross-petition to modify child support. As the appellant, Father had the obligation to timely provide this court with trial transcripts necessary to the resolution of this appeal. *See* ARCAP 11(c).

consider the children's best interests. A.R.S. § 25-403; *see also Hays v. Gama*, 205 Ariz. 99, 102, ¶ 18 (2003) (stating that "the child's best interest is paramount"). The best interest of the children is for the superior court alone to decide. *Nold*, 232 Ariz. at 273, ¶ 14 (citing *DePasquale v. Superior Court (Thrasher)*, 181 Ariz. 333, 336 (App. 1995)).

¶27 Father argues he has completed many of the tasks set before him, including a psychological evaluation, parenting classes, and counseling. Although this may be true, Father fails to realize the import or goal of these tasks, which is to make him better able to care for the children safely and to demonstrate what he has learned to the court so that it may make decisions that consider the children's welfare and are in the children's best interests. Although the record indicates Father is willing and able to take direction from parental supervisors, it is not clear to what extent he is learning better parenting skills. And as much as concerns exist about Mother's ongoing physical and mental limitations and the children's psychological well-being given the documented abhorrent behaviors consistently exhibited by Mother or the maternal grandparents, legitimate concerns also exist about Father's ability to parent the children safely.

¶28 Further, as Father recognizes, he may have failed to submit at least some of his "certificates and counseling notes" for admission into evidence. And without that documentary evidence and transcripts of the proceedings, we assume any missing portions of the record support the superior court's findings and conclusions. *See Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995). We also assume the court considered all relevant information in the record. *See Aguirre v. Robert Forrest, P.A.*, 186 Ariz. 393, 397 (App. 1996). Additionally, without the transcripts, we cannot determine whether the court has improperly precluded or failed to consider the evidence. Given the conclusory arguments Father presents on appeal, and the lack of transcripts, we find no abuse of the court's discretion in ordering that Mother retain legal decision-making authority and declining to increase Father's parenting time. *See Baker*, 183 Ariz. at 73; *Romero v. Sw. Ambulance & Rural/Metro Corp.*, 211 Ariz. 200, 203, ¶ 4 (App. 2005) (holding unsupported arguments without the relevant transcripts are insufficient for this court to meaningfully review the trial court's rulings or overcome the presumption that those rulings are supported by the record); *see also Gen. Elec. Cap. Corp. v. Osterkamp*, 172 Ariz. 191, 193 (App. 1992) (stating a judgment is presumed correct, and the appellant bears the burden to show otherwise).

### IV.    The Court's Award of Attorneys' Fees to Mother

**¶29**    Father also argues the superior court erred in awarding attorneys' fees to Mother.

**¶30**    We review for an abuse of discretion an award of attorneys' fees under A.R.S. § 25-324.  *Rinegar v. Rinegar*, 231 Ariz. 85, 90, ¶ 22 (App. 2012).

**¶31**    In awarding attorneys' fees to Mother, the court found that no substantial disparity existed between the parties' finances[7] and that "Father's petition was not grounded in fact or based on law."  The court's conclusion, however, is refuted by the record.

**¶32**    The record makes clear that Father's July 2019 petition to modify legal decision-making and parenting time was filed in response to him continuing to lose parenting time and his concerns over the children's well-being as a result of sexual abuse allegations made against him by the maternal grandparents after he began unsupervised parenting time with the children.  Even assuming *arguendo* the court did not abuse its discretion in denying Father's motion to submit "new" evidence of the DCS investigation and report finding those claims unsubstantiated, the record indicates that, in her response to Father's motion, Mother acknowledged at trial that the DCS investigation concluded the allegations against Father were unsubstantiated.  Given such an acknowledgment, the court abused its discretion in concluding Father's petition was not grounded in fact or based on law, even without a transcript of the proceedings or the admission of Father's "newly discovered" evidence.  Accordingly, we vacate the court's award of attorneys' fees to Mother.

### V.    Father's Allegations of an Unfair Trial and Bias

**¶33**    Father also argues the superior court did not fairly consider the evidence presented at trial and suggests the court was biased against him.  The superior court has discretion over the control and management of the trial.  *See Hales v. Pittman*, 118 Ariz. 305, 313 (1978).  "We will not interfere in matters within the [] court's discretion unless we are persuaded that the exercise of such discretion resulted in a miscarriage of justice or deprived one of the litigants of a fair trial."  *Christy A. v. Ariz. Dep't of Econ.*

---

[7]    The record indicates the maternal grandparents have funded and apparently driven much of the litigation in support of Mother and against Father.  The court would not have abused its discretion in considering that funding as part of Mother's financial resources under A.R.S. § 25-324(A).

*Sec.*, 217 Ariz. 299, 308, ¶ 31 (App. 2007) (citation omitted). In this case, Father's arguments amount to a request that we reweigh the evidence, something we will not do. *See Hurd*, 223 Ariz. at 52, ¶ 16. On this record, we find no evidence that the court denied Father a fair trial.

**¶34** As for any suggestion the superior court was biased against Father, we begin our analysis with the presumption that the superior court judge is free of prejudice and bias. *State v. Ramsey*, 211 Ariz. 529, 541, ¶ 38 (App. 2005). To overcome this presumption, Father must prove the court harbored "a hostile feeling or spirit of ill-will, or undue friendship or favoritism." *State v. Cropper*, 205 Ariz. 181, 185, ¶ 22 (citation omitted), *supplemented by* 206 Ariz. 153 (2003). To prove this, Father must "set forth a specific basis for the claim of partiality and prove by a preponderance of the evidence that the judge is biased or prejudiced." *State v. Medina*, 193 Ariz. 504, 510, ¶ 11 (1999). Here, Father has not rebutted the presumption of judicial impartiality, and after reviewing the record presented, we conclude the court impartially considered the parties' positions.

 *VI. Costs on Appeal*

**¶35** We award taxable costs on appeal to Father upon compliance with Rule 21, ARCAP.

**CONCLUSION**

**¶36** We affirm the superior court's post-decree orders, except for the award of attorneys' fees to Mother, which we vacate.

A D ᴢM. W K K{    o  Œ I }}µ(
FILED:  AA