[Civ. No. 45908. Second Dist., Div. Two. Oct. 24, 1975.]

TERRY LE DOUX et al., Plaintiffs and Appellants, v.
CREDIT RESEARCH CORPORATION, Defendant and Respondent.

**COUNSEL**

Kenyon F. Dobberteen, Joseph P. Charney, Edward S. Mizrahi, Stephen L. Kostka, Eric P. Gold and Thomas A. Diamond for Plaintiffs and Appellants.

Noel W. Nellis, Edward Lyman, Herbert M. Rosenthal, John N. Doggett III and Truitt A. Richey, Jr., as Amici Curiae on behalf of Plaintiffs and Appellants.

Simmons, Ritchie & Segal and Michael W. Roberts for Defendants and Respondents.

Dahl, Hefner, Stark, Marois & James and John D. Bessey as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**ROTH, P. J.**—Appellants, Terry Le Doux and Isabel Milan, individually and on behalf of the general public as permitted by Civil Code section 3369 seek an injunction restraining respondent Credit Research Corporation from practicing law. They appeal the judgment of dismissal of our superior court entered following their refusal to amend after an order sustaining a demurrer to their complaint.

Appellants admit that respondent is duly incorporated and licensed as a collection agency in this state.

The sole question presented is whether respondent's manner of doing business constitutes the practice of law. The crucial allegations of the complaint on this subject are:

"7. . . . [respondent] and . . . in the ordinary course of business and for financial gain, have repeatedly engaged and continue to engage in the following collection practice:

"(a) . . . accept assignments of claims from creditors for the purpose of allowing [respondent] to file suits thereon in its own name . . . .

"(b) . . . the . . . assignments are assignments for the purpose of "Collection": No monetary consideration is paid for said assignments; but instead, there is a contingent fee arrangment between [respondent] . . . and the creditors whereby [respondent] . . . retains a fixed amount of any claim it collects returning the balance to the creditor.

"(c) . . . [respondent] does file suits in its own name . . . . . . . in said suits, . . . [respondent] is represented by its own attorneys under . . . [respondent's] direct control and supervision.

"(d) . . . there is no attorney-client relationship between the creditor-assignors of the aforementioned claims and . . . [respondent's] attorneys."

The parties, and amici curiae agree on the basic principles that only the Supreme Court of this state may grant the privilege to practice law subject to reasonable acts by the Legislature (*In re Lavine* (1935) 2 Cal.2d 324, 328 [41 P.2d 161, 42 P.2d 311]), and that collection agencies are comprehensively controlled by the state. (Bus. & Prof. Code, arts. 1-12, ch. 8, div. 3 (commencing with § 6850) (Collection Agency Act); see also Cal. Admin. Code, tit. 16, §§ 606-636.) Collection agencies are specifically prohibited from practicing law by section 6947[1] of Collection Agency Act and section 6125 of the State Bar Act (Bus. & Prof. Code, ch. 4, div. 3 (commencing with § 6000)) which prohibits anyone who is not a member of the State Bar from practicing law. The parties also agree that although the sections above cited speak of the practice of law, nowhere is the phrase "practice of law" defined. It appears, too, to be agreed that the decisive power to flesh out the definition lies with the courts.

---

[1]Unless otherwise noted, all future section references are to the Business and Professions Code.

As we read the cases, the appellate decisions *King* v. *Mortimer* (1948) 83 Cal.App.2d 153 [188 P.2d 502]; *Clark* v. *Andrews* (1952) 109 Cal.App.2d 193 [240 P.2d 330]; *Macri* v. *Carson Tahoe Hospital, Inc.* (1966) 247 Cal.App.2d 63 [55 Cal.Rptr. 276], and the Supreme Court of this state in *Harrison* v. *Adams* (1942) 20 Cal.2d 646, 650 [128 P.2d 9]; *Estate of Butler* (1947) 29 Cal.2d 644, 652 [177 P.2d 16, 171 A.L.R. 343], squintingly and in at least two instances, *Butler* and *Macri,* implicitly approve the doctrine of *Cohn* v. *Thompson* (1932) 128 Cal.App.Supp. 783 [16 P.2d 364], as applied to the conceded facts before us. We think that the doctrine of *Cohn* is sound in all respects. In *Cohn* the court said at page 788: "The assignee merely contracts to file suit in his own name, if necessary to make the collection. But he does not agree to furnish any legal services whatever to the assignor. The assignee employs the attorney and controls his action. No legal services are performed for the assignor. The only duty of the assignee is to account to the assignor after the collection has been made. In making the agreement to bring suit the assignee merely agrees to do that which he can legally do without any agreement, by virtue of the assignment. Provided the assignment is absolute, so as to vest the apparent legal title in the assignee, the latter is entitled to sue in his own name . . . ." (*Cohn* v. *Thompson* (1932) *supra,* 128 Cal.App.Supp. 783, 788.)

After reciting the definition of practicing law in *People* v. *Merchants Protective Corp.* (1922) 189 Cal. 531, 535 [209 P. 363], the court in *Cohn* continued: "In the case now before us . . . we find that the plaintiff was not practicing law within the meaning of the foregoing definition. Certainly the plaintiff did not agree to furnish to his assignor legal advice of counsel, nor to prepare legal instruments or contracts. Neither did the plaintiff agree to do or perform services in a court of justice for the assignor or to employ an attorney to perform such services for the assignor. The services performed by the attorney were for the assignee alone, who was the real party in interest and exercised entire control of the action, the assignor having no power to exercise any control whatsoever either over the action or the attorney in the performance of his services." (128 Cal.App.Supp. 783, 788.)

Appellants argue however that doctrine of *Cohn* was limited by the Legislature when in 1933 after *Cohn* was decided it added the provision now contained in section 6947[2] that nothing in the Collection Agency Act authorized a collection agency to engage in the practice of law. Asserting

---

[2]Originally enacted as section 6872, the provision was added to section 6947 in 1959. (Stats. 1959, ch. 2159, § 24, p. 5231.)

that the Legislature must be presumed to have known what the law was at the time of its amendment (*People* v. *Perkins* (1951) 37 Cal.2d 62 [230 P.2d 353]) appellants argue that the Legislature intended to change the law as stated by *Cohn* but the argument overlooks the fact that the amended section also provides that a collection agency may bring legal action on claims assigned to it if "it appears by a . . . licensed attorney . . . ." It would appear therefore predicated on the principle of *Perkins* that the Legislature did not intend to change the doctrine of *Cohn* but intended to ratify it. Further, although the Legislature may prescribe reasonable regulations as to the minimum qualifications required before a person may practice law (*In re Lavine, supra,* 2 Cal.2d 324), the ultimate question of who may practice law is as appellants concede a judicial question. (*In re Hallinan* (1954) 43 Cal.2d 243 [272 P.2d 768].) If the Legislature intended any sort of regulation by its amendment of 6947 it was to negate any implication in the *Cohn* doctrine that because collection agencies were owners of the legal title of assigned claims such agencies could initiate law suits in propria persona. (See Note, *Collection Agencies—Practice of Law* (1945) 33 Cal.L.Rev. 622.)

Appellants argue that the legal profession and the public are harmed by the actions of collection agencies and that the operations of such agencies are against public policy. Cases such as *Czap* v. *Credit Bureau of Santa Clara Valley* (1970) 7 Cal.App.3d 1 [86 Cal.Rptr. 417], and *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94 [101 Cal.Rptr. 745, 496 P.2d 817] are cited which show extreme acts of an abuse on the part of some in the conduct of business. However, appellants would have us discredit the entire collection business because of the abuses of a few. Contrary to appellants' position the public policy of this state recognizes that a collection agency is a necessary and a lawful business. Such business is subject to numerous statutory and administrative regulations. If more regulations are needed in the public interest on which subject we express no opinion, appellants should apply to the Legislature. In Note, *The Real Party in Interest Rule Revitalized; Recognizing Defendant's Interest In the Determination of Proper Parties Plaintiff,* 55 Cal.L.Rev. 1452, 1476-1477, the author states:

"Commercial necessity is the primary justification for allowing suits by assignees for collection only. Refusal to permit such parties to sue results in unnecessary economic waste. If assignees for collection only were not permitted to sue, merchants might be forced to decide between abandoning their enterprises while suing on delinquent accounts, or

abandoning their delinquent accounts. Neither choice produces socially desirable results.

"       .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

". . . The policy reasons for requiring that suits be prosecuted by beneficially interested parties are highly abstract. They reflect value judgments regarding fairness. Against such intangible judgments must be weighed the probability that tangible economic waste will follow from refusal to allow assignees for collection only status to sue. In small cases the threat of tangible harm seems far more compelling than the intangible feeling that suits should be prosecuted by the beneficially interested party." (Fns. omitted.)

Confined to the facts of this case we cannot improve on the doctrine of *Cohn.* We adopt it. Respondent is not practicing law.

The judgment is affirmed.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied November 17, 1975, and appellants' petition for a hearing by the Supreme Court was denied December 23, 1975.