[No. G045856. Fourth Dist., Div. Three. Sept. 28, 2012.]

DAVID FINK, Plaintiff and Appellant, v.
MOSES SHEMTOV et al., Defendants and Respondents.

COUNSEL

David Fink, in pro. per., for Plaintiff and Appellant.

Krane & Smith and Marc Smith for Defendants and Respondents.

OPINION

FYBEL, J.—

## INTRODUCTION

Plaintiff David Fink appeals after judgment was entered in favor of, inter alia, defendant S&E Stone, Inc. (S&E). Acting in propria persona, Fink filed a complaint against S&E and others, as the assignee of Stone Center Corporation's (Stone Center) claims against them and litigated those claims through a bench trial. In a thorough statement of decision issued after the trial court granted S&E's motion for judgment under Code of Civil Procedure section 631.8, the court found Stone Center and Fink's assignment agreement to be void against public policy. The court explained the agreement did not constitute a valid assignment of claims, but a joint venture whereby Stone Center provided the causes of action and Fink provided legal representation of their venture. The trial court found the assignment agreement violated Business and Professions Code section 6125, which prohibits the unauthorized practice of law.

Applying California assignment law, we disagree with the trial court's analysis of the legal effect of the assignment agreement and reverse the

judgment as to S&E only. Stone Center absolutely and completely transferred all of its rights to its claims against S&E, and thus legal title to them, to Fink. Fink's agreement to split with Stone Center any recovery he obtained in prosecuting those claims did not undermine the validity of the assignment of legal title to those claims. Such arrangements are legal in collection cases and do not create an attorney-client relationship between the assignor and the assignee. (See *National R. Co. v. Metropolitan T. Co.* (1941) 17 Cal.2d 827, 831 [112 P.2d 598] (*National*); *Macri v. Carson Tahoe Hospital, Inc.* (1966) 247 Cal.App.2d 63, 65–66 [55 Cal.Rptr. 276] (*Macri*).) In addition, Civil Code section 1788.2, subdivisions (c) and (g) define the term "debt collector" as including a natural person, and Business and Professions Code section 6125 allows individuals to represent themselves in court. There was no evidence Stone Center controlled the litigation or had any right to control the litigation, and no evidence Fink represented Stone Center in court or otherwise engaged in the unauthorized practice of law. Accordingly, substantial evidence did not support the trial court's finding the assignment contract was void. Finally, we affirm the judgment in favor of defendants Moses Shemtov, Mary Shemtov, and Amota Properties, LLC.

## BACKGROUND

### I.

#### IN PROPRIA PERSONA, FINK FILES A COMPLAINT AGAINST DEFENDANTS AS ASSIGNEE OF STONE CENTER'S CLAIMS; DEFENDANTS' COUNSEL QUESTIONS FINK'S STANDING AS ASSIGNEE OF CLAIMS AT PRETRIAL HEARING.

In February 2007, Fink filed a complaint containing claims for breach of contract and fraud against S&E, Moses Shemtov, his wife, Mary Shemtov, and Amota Properties, LLC. The complaint alleged that in 2005, Stone Center extended to Moses Shemtov instant credit to purchase merchandise, in exchange for Shemtov's agreement to complete and return Stone Center's credit contract. The complaint further alleged Moses Shemtov neither returned the completed credit contract nor paid for the merchandise. The complaint alleged Stone Center assigned its claim to Fink. Fink filed the complaint, in propria persona, and, with the exception of one period of a few weeks in the fall of 2010, Fink has represented himself throughout the four-year duration of this litigation.

Fink failed to timely post jury fees and the case was set for a bench trial. During a pretrial hearing, the parties stipulated that their dispute was based on whether S&E paid Stone Center $81,236.70 for merchandise it purchased from Stone Center. Defendants' counsel stated that although the complaint

alleged the existence of a written assignment of Stone Center's claims to Fink, Fink failed to produce any evidence supporting such an assignment. The trial court stated, "[w]ell, he has the burden of proof since he is the plaintiff. So he is going to have to prove a written assignment. If he doesn't prove a written assignment, then he doesn't prevail. That is an element of proof rather than a pretrial issue."

The court told Fink he needed to produce evidence showing that Fink had standing in the case. The trial court explained: "I am just concerned whether or not you are practicing law without a license and I want to know what kind of consideration you paid. And I want to know if your transaction is a sham transaction or a real transaction. And it's your burden of proof as plaintiff to prove that this is a valid, enforceable assignment." Fink stated he would bring the assignment agreement to court.

## II.

### SUMMARY OF EVIDENCE PERTAINING TO THE ASSIGNMENT AGREEMENT

At trial, Fink produced two documents to prove he had standing. First, he produced a document entitled "Assignment Contract" (the assignment contract) which stated it was executed on February 16, 2007, by Allan Lan, on behalf of Stone Center, and by Fink. The assignment contract stated: "The parties to this agreement are the *Creditor* (*Stone Center*, Inc); and The *Creditor Assignee* (David Fink). [¶] The debtors are Moses Shemtov, <u>AKA</u>: Moshe Shemtov, <u>DBA</u>: S&E, <u>DBA</u>: *S&E Stone*, <u>DBA</u>: *Marble Express*; and *S&E Stone, Inc*, <u>DBA</u>: *Marble Express*[.] [¶] The debtors owe the *Creditor* approximately $81,236.70 in debt for merchandise purchased on credit in August and September of 2005. [¶] The *Creditor Assignee* agrees to pay the *Creditor* $5,000.00, plus 50% of any recovery. The *Creditor Assignee* shall pay $100.00 per month until the $5,000.00 is satisfied. The $100.00 payments are due on the 1st day of each month, thereafter until the balance due and owing is satisfied. The first payment is due on March 1, 2007, and shall commence month-to-month until May 1, 2011. Default occurs if payment is not received within five (5) days of the due date. [¶] The *Creditor Assignee* agrees to file suit, prosecute the action, and attempt to procure a judgment with the documentation provided. Further, *Creditor Assignee* agrees to attempt enforcement of any judgment entered. [¶] The *Creditor* agrees to provide all necessary documentation, and testify (if necessary), at trial."

Lan testified at trial that the assignment contract was prepared in 2007 and that Stone Center's assignment of claims as to the debt was "complete." Lan also testified that in exchange for the assignment of claims, Fink agreed to

pay Stone Center $5,000 outright plus 50 percent of any recovery he obtained in pursuing the assigned claims. Lan stated that Fink paid Stone Center $4,000 and "[p]robably [$]5,000 already" in cash.

Fink also produced a document entitled "Acknowledgment of Assignment of Debt" (the acknowledgment of assignment) which was signed by William Gaynor, as a corporate officer of Stone Center. The acknowledgment of assignment, executed on February 23, 2007, stated in part: "The Creditor is *Stone Center Corporation* . . . . [¶] The debtors are Moses Shemtov, <u>AKA</u>: Moshe Shemtov, <u>DBA</u>: S&E, <u>DBA</u>: *S&E Stone*, <u>DBA</u>: Marble Express; and *S&E Stone*, Inc, <u>DBA</u>: Marble Express." The acknowledgment of assignment listed the dates of five invoices, the invoice numbers, and the amount due for each invoice. It stated the debtors owed Stone Center a total of $81,236.70. The acknowledgment of assignment further stated: "I hereby transfer and assign all rights to these debts, including all interest rights, to David Fink."[1]

At trial, the court observed that the substance of the assignment contract and the acknowledgment of assignment is "typically . . . done in one single document." The court stated, "it appears to be an absolute assignment and this is signed a week later. Typically all of this is signed in one single document. In this case it is two separate documents. I don't see any fatal defect, the fact that it's in two separate documents." Defendants' counsel responded, "I don't either, Your Honor."

The trial court stated that Fink had made a prima facie showing of a valid assignment and trial continued on the merits of the claims.

### III.

THE TRIAL COURT GRANTS DEFENDANTS' MOTION FOR NONSUIT AS TO MOSES SHEMTOV, MARY SHEMTOV, AND AMOTA PROPERTIES; S&E MOVES FOR JUDGMENT ON THE GROUND FINK LACKED STANDING DUE TO AN INVALID ASSIGNMENT; AFTER INVITING FURTHER BRIEFING AND EVIDENCE ON THE ASSIGNMENT ISSUE, THE TRIAL COURT CONCLUDES THE ASSIGNMENT IS INVALID.

After the parties finished putting on their evidence, the trial court granted defendants' motion for nonsuit as to Mary Shemtov, Moses Shemtov, and Amota Properties. S&E moved for judgment under Code of Civil Procedure

---

[1] Fink filed the declaration of Gaynor after the trial court's posttrial invitation to submit further briefing and evidence on the assignment issue. In his declaration, Gaynor stated he was a partner and a corporate officer of Stone Center. Gaynor declared that he believed the debt to be "practically worthless." He further declared the debt was assigned to Fink (who is Gaynor's brother), "[t]he assignment was absolute," and Fink never gave Stone Center any legal advice.

section 631.8 and argued Fink did not have standing in the case because the assignment of claims was invalid.

As to the motion for judgment, the trial court stated that subject to further briefing on the issue of the validity of the assignment, "I think that what would be appropriate here would be a judgment in favor of the plaintiff as against the corporation in the amount of [$]81,236.70, and then I'll need an interest calculation. And this will not be a case for attorney's fees obviously. [¶] The fraud has not been proven." The court set a briefing schedule and a hearing on the issue of the validity of the assignment. Our record shows the trial court received some briefing on the assignment issue.

At the scheduled hearing on the assignment issue, the trial court stated that whether Stone Center and Fink's arrangement constituted a valid assignment was a "very difficult issue" and that the arrangement might constitute a valid assignment, but it might be a joint venture involving the unauthorized practice of law. The court asked Fink to prepare a declaration under penalty of perjury and a brief addressing why the arrangement constituted a valid assignment. Fink submitted a brief, Gaynor's declaration described *ante*, and Fink's own declaration in which he stated, inter alia, that he never engaged in the practice of law and that Stone Center's assignment of claims "is absolute."

At another hearing on the assignment issue, the trial court granted S&E's motion for judgment. In a minute order, the court explained: "After fully consider[ing] the arguments of all parties, both written and oral, as well as the evidence presented, the Court now rules as follows: The Court finds plaintiff has been practicing law without a license and has no standing to prosecute this case as stated on the record. Judgment is for the defendant S & E Stone, Inc. The Court will issue a Proposed Statement of Decision this week."

IV.

PROPOSED STATEMENT OF DECISION; FINK FILES OBJECTIONS; THE
TRIAL COURT OVERRULES OBJECTIONS AND THE PROPOSED
STATEMENT OF DECISION BECOMES FINAL STATEMENT OF DECISION.

The trial court issued a detailed, well-organized, eight-page proposed statement of decision. In the proposed statement of decision, the court stated that for years, "Fink has engaged in the debt collection business based on assignments in the Orange County Superior Court." The court listed examples of Fink's collection cases and stated it took judicial notice of the exhibits contained in the court's records in those cases.

The trial court reviewed general principles of law including (1) the assignment of claims is generally permitted; (2) Business and Professions Code section 6125 permits an individual to act as his or her own attorney but prohibits anyone who is not a licensed member of the State Bar from providing legal representation to others; and (3) California courts have approved situations where debts have been assigned to collection agencies for recovery.

In the proposed statement of decision, the trial court concluded that the assignment contract reflected Fink and Stone Center "pool[ing] their resources to create a joint venture. Stone Center contributed the cause of action; Fink invested his legal efforts. They agreed to split the profits from the joint venture." It further stated, "Fink purchased half of the cause of action with his sweat equity. Stone Center was still entitled to recover[] one-half of the profits. Even though he owned only half of the cause of action, Fink represented the entire joint venture in court." The trial court cited the language of the assignment contract itself as well as excerpts from briefs filed by Fink, in which he described his function as similar to an attorney and spoke of owning half of the claim against defendants. Citing *Le Doux v. Credit Research Corp.* (1975) 52 Cal.App.3d 451, 454–455 [125 Cal.Rptr. 166] (*Le Doux*), the trial court concluded Fink's prosecution of the claims exceeded the relationship approved in collection actions. In such cases, the court explained, "[t]he key distinction is that the collection agency appeared by a licensed attorney." Here, the court concluded, "Fink did not hire a licensed attorney to prosecute the recovery. He provided the legal service himself and effectively represented the joint venture in court. This representation is the unauthorized practice of law."

In the proposed statement of decision, the court concluded, "[t]he foundation of the Assignment Contract (Exhibit 90) is the illegal consideration from representing the joint venture without a license to practice law." It stated, "Fink lacked standing to bring the action, because the assignment was void and against public policy"; the statement of decision explained it was based on the unauthorized practice of law.

Fink filed objections to the proposed statement of decision. In a minute order, the trial court stated it had reviewed Fink's objections and the "Statement of Decision to remain unchanged."

V.

JUDGMENT IS ENTERED IN DEFENDANTS' FAVOR; FINK APPEALS.

Judgment was entered and stated in pertinent part: "After hearing the evidence and arguments of counsel, the case was submitted to the Court. [¶]

The Court enters the following judgment: [¶] Now, therefore, it is therefore ordered adjudicated and decreed that: [¶] 1. Plaintiff David Fink takes nothing by his causes of action contained in the Complaint. [¶] 2. Judgment be entered in favor of Defendant, S&E Stone, Inc. dba Marble Express, a California Corporation against Plaintiff David Fink. The remaining Defendants Moses Shemtov, Mary Shemtov and Amota Properties, LLC, a limited liability company were dismissed at the time of trial. [¶] 3. Defendants are entitled to recover their costs against Plaintiff." (Some capitalization omitted.)

Fink appealed.[2]

## DISCUSSION

### I.

#### APPLICABLE STANDARDS OF REVIEW

An order granting a defense motion for judgment under Code of Civil Procedure section 631.8 in a nonjury trial is reviewed under the substantial evidence standard. (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528 [86 Cal.Rptr.2d 473].) We review the trial court's express factual findings in the statement of decision, and any implied findings, for substantial evidence. (*Apex LLC v. Sharing World, Inc.* (2012) 206 Cal.App.4th 999, 1009 [142 Cal.Rptr.3d 210].) "We review legal issues . . . under a de novo or independent standard." (*Ibid.*) "When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 [135 Cal.Rptr.2d 505].)

### II.

#### SUBSTANTIAL EVIDENCE DID NOT SUPPORT THE TRIAL COURT'S FINDINGS THE ASSIGNMENT CONTRACT WAS VOID.

For the reasons we will explain, insufficient evidence supported the trial court's findings that the assignment of Stone Center's claims to Fink constituted an agreement to form a joint venture to prosecute such claims instead of

---

[2] In his opening appellate brief, Fink asserts the trial court should have found Moses Shemtov individually liable. Fink also asserts that the trial court erred by precluding him from introducing into evidence bank records showing that Moses Shemtov transferred assets to Amota Properties to avoid paying the subject debts. Because Fink has failed to provide meaningful analyses to support these arguments in challenging the judgment in favor of Moses Shemtov and Amota Properties, these arguments are forfeited and we do not address them further. Fink does not challenge the entry of judgment in favor of Mary Shemtov.

a complete and absolute assignment of legal title of such claims to Fink. Insufficient evidence supported the trial court's findings the assignment contract was based on Fink engaging in the unauthorized practice of law in violation of Business and Professions Code section 6125 and their agreement was distinguishable from permissible assignment agreements entered into in the collections context.

## A.

### Business and Professions Code Section 6125

Business and Professions Code section 6125 provides: "No person shall practice law in California unless the person is an active member of the State Bar." In *Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119, 127 [70 Cal.Rptr.2d 304, 949 P.2d 1] (*Birbrower*), the California Supreme Court explained: "The California Legislature enacted section 6125 in 1927 as part of the State Bar Act (the Act), a comprehensive scheme regulating the practice of law in the state. [Citation.] Since the Act's passage, the general rule has been that, although persons may represent themselves and their own interests regardless of State Bar membership, no one but an active member of the State Bar may practice law for another person in California. [Citation.] The prohibition against unauthorized law practice is within the state's police power and is designed to ensure that those performing legal services do so competently. [Citation.]" The court further stated: "A violation of section 6125 is a misdemeanor. [Citation.] Moreover, 'No one may recover compensation for services as an attorney at law in this state unless [the person] was at the time the services were performed a member of The State Bar.' [Citation.]" (*Ibid.*)

The Supreme Court noted that the State Bar Act (Bus. & Prof. Code, § 6000 et seq.) did not define the term "practice law," but stated that the term "practice law" has been defined in case law as " ' "the doing and performing services in a court of justice in any matter depending therein throughout its various stages and in conformity with the adopted rules of procedure." ' [Citation.]" (*Birbrower, supra*, 17 Cal.4th at p. 128.) The court further stated the practice of law also included "legal advice and legal instrument and contract preparation." (*Ibid.*)

## B.

### General Legal Principles Pertaining to the Assignment of Claims

In *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2012) 203 Cal.App.4th 1328, 1335 [138 Cal.Rptr.3d 24], the appellate court

explained: " ' "[I]t is a fundamental principle of law that one of the chief incidents of ownership in property is the right to transfer it." [Citation.]' [Citation.] 'This "chief incident of ownership" applies equally to tangible and intangible forms of property, including causes of action. Originally codified in 1872, [Civil Code] section 954 states: "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner." ■ An assignment is a commonly used method of transferring a cause of action.' [Citation.] ' "To 'assign' ordinarily means to transfer title or ownership of property . . . ." ' [Citation.]"

■ The California Supreme Court in *National, supra,* 17 Cal.2d at page 831, stated that "[i]t is well established that an assignment of a chose in action for collection *vests the legal title in the assignee* whether or not any consideration is paid therefor. In such case *the assignee may maintain a suit thereon in his own name, even though the assignor retains an equitable interest in the thing assigned.* [Citations.]" (Italics added; see *Harrison v. Adams* (1942) 20 Cal.2d 646, 650 [128 P.2d 9] ["An assignment for collection vests legal title in the assignee which is sufficient to enable him to maintain an action in his own name, but the assignor retains the equitable interest in the thing assigned."].) The Supreme Court explained: "In determining what rights or interests pass under an assignment, the intention of the parties as manifested in the instrument is controlling. [Citation.] An unqualified assignment of a contract or chose in action, however, with no indication of the intent of the parties, vests in the assignee the assigned contract or chose and all rights and remedies incidental thereto. [Citation.] These incidental rights include certain ancillary causes of action arising out of the subject of the assignment and accruing before the assignment is made." (*National, supra,* at pp. 832–833.)

■ "A complete assignment passes legal title to the assignee who is the real party in interest and may sue in his or her real name." (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd., supra,* 203 Cal.App.4th at p. 1335.) "An assignment requires very little by way of formalities and is essentially free from substantive restrictions. '[I]n the absence of [a] statute or a contract provision to the contrary, there are no prescribed formalities that must be observed to make an effective assignment. It is sufficient if the assignor has, in some fashion, manifested an intention to make a present transfer of his rights to the assignee.' [Citations.] Generally, interests may be assigned orally [citations], and assignments need not be supported by any consideration [citations]." (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1002 [95 Cal.Rptr.3d 605, 209 P.3d 937].)

■ The proper scope of legal representation of the parties to an assignment agreement was addressed in *Macri, supra,* 247 Cal.App.2d at pages

65–66, in which the court explained: "The legal effect of an assignment for collection is delineated in *Cohn v. Thompson* [(1932)] 128 Cal.App. Supp. 783, at page 788 [16 P.2d 364] . . . , as follows: 'The assignee merely contracts to file suit in his own name, if necessary to make the collection. But he does not agree to furnish any legal services whatever to the assignor. The assignee employs the attorney and controls his action. No legal services are performed for the assignor. *The only duty of the assignee is to account to the assignor after the collection has been made.* In making the agreement to bring suit the assignee merely agrees to do that which he can legally do without any agreement, by virtue of the assignment. *Provided the assignment is absolute, so as to vest the apparent legal title in the assignee, the latter is entitled to sue in his own name, whatever collateral arrangements have been made between him and the assignor respecting the proceeds.'* " (Italics added.)

In *Cohn v. Thompson, supra*, 128 Cal.App. at page Supp. 788, the appellate department of the superior court stated: "In the case now before us . . . we find that the plaintiff was not practicing law within the meaning of the foregoing definition. Certainly the plaintiff did not agree to furnish to his assignor legal advice or counsel, nor to prepare legal instruments or contracts. Neither did the plaintiff agree to do or perform services in a court of justice for the assignor or to employ an attorney to perform such services for the assignor. The services performed by the attorney were for the assignee alone, who was the real party in interest and exercised entire control of the action, the assignor having no power to exercise any control whatsoever either over the action or the attorney in the performance of his services." (See *Le Doux, supra*, 52 Cal.App.3d at p. 454 ["We think that the doctrine of *Cohn* is sound in all respects."].)

## C.

### Le Doux, supra, *52 Cal.App.3d 451, the Repeal of Former Business and Professions Code Section 6947, and the Enactment of the Rosenthal Fair Debt Collection Practices Act*

In the statement of decision, citing *Le Doux, supra*, 52 Cal.App.3d 451, the trial court concluded that Fink's representation exceeded the relationship approved in collection actions because in such actions, the collection agency "appeared by a license[d] attorney." The statement of decision stated, "David Fink did not hire a licensed attorney to prosecute the recovery. He provided the legal service himself and effectively represented the joint venture in court. This representation is the unauthorized practice of law."

In *Le Doux, supra*, 52 Cal.App.3d at page 455, the appellate court stated, in dictum, that in amending Business and Professions Code former section

6947 of the since repealed Collection Agency Act (Bus. & Prof. Code, former § 6580 et seq.) (*Cross v. Bonded Adjustment Bureau* (1996) 48 Cal.App.4th 266, 273, fn. 4 [55 Cal.Rptr.2d 801]), the Legislature might have intended to "negate any implication in the *Cohn*[ *v. Thompson, supra,* 128 Cal.App. Supp. 783] doctrine that because collection agencies were owners of the legal title of assigned claims such agencies could initiate law suits in propria persona." Before it was repealed in 1992, former section 6947 provided in part: "Nothing in this chapter shall be deemed to authorize a collection agency licensee while operating as a collection agency to perform any act or acts, either directly or indirectly, constituting the practice of law unless the licensee is an attorney authorized to practice law. [¶] No suit may be instituted on behalf of a collection agency licensee in any court on any claim assigned to it in its own name as the real party in interest unless it appears by a duly authorized and licensed attorney at law."

█ In any event, whether a collection *agency* could prosecute collection claims without being represented by a licensed attorney is not relevant in determining whether a debt collector must be represented by counsel to prosecute collection claims assigned to him or her. With the passage of the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.) in 1977, the Legislature has expressly authorized individuals to act as debt collectors. Civil Code section 1788.2, subdivision (b) defines the term "debt collection" as "any act or practice in connection with the collection of consumer debts." Section 1788.2, subdivision (c) defines the term "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection, but does not include an attorney or counselor at law." Section 1788.2, subdivision (g) provides "[t]he term 'person' means a *natural person,* partnership, corporation, limited liability company, trust, estate, cooperative, association or other similar entity." (Italics added.) █ As discussed *ante,* Business and Professions Code section 6125 permits individuals to act as their own attorneys as long as they do not represent others as well.

D.

*Insufficient Evidence Showed Fink Lacked Standing to Prosecute This Action.*

Here, the record is unrefuted on the following points: (1) Gaynor, on behalf of Stone Center, transferred all rights to the debt allegedly owed by S&E to Fink and that such assignment was complete and absolute; (2) in exchange for the assignment, Fink agreed to pay Stone Center $5,000 plus 50 percent

of any recovery he obtained after pursuing the assigned claims; (3) Fink has paid Stone Center most, if not all, of the $5,000 he owed Stone Center under the assignment contract; (4) although Fink agreed to file a lawsuit against defendants, prosecute the action, attempt to procure a judgment, and enforce any such judgment, Fink did not agree to represent Stone Center or provide Stone Center any legal advice; (5) Fink filed the complaint against defendants in his own name and was the sole plaintiff; and (6) there was no evidence Stone Center retained any control over, or the right to control, the litigation of the assigned claims following the assignment of the claims to Fink.

 Pursuant to Civil Code section 1788.2, subdivision (c), Fink, as an individual, was permitted to act as a debt collector. In the statement of decision, the trial court expressly found that Fink "has engaged in the debt collection business." In light of the undisputed evidence of Stone Center's absolute assignment of its claims to Fink who attempted to obtain recovery on those claims, Stone Center vested legal title to those claims in Fink. (*Macri, supra*, 247 Cal.App.2d at p. 67.) That Fink agreed to split with Stone Center any recovery he obtained after prosecuting the assigned claims does not undermine the assignment's effect of vesting legal title of the claims in Fink, thereby enabling him to file suit in his own name. (*National, supra*, 17 Cal.2d at p. 831.) Furthermore, no attorney-client relationship arose between Stone Center and Fink or between Stone Center and any attorney hired by Fink to act on his behalf. (*Macri, supra*, at p. 67 ["We conclude that the naked assignment for collection, vesting legal title to the account in the assignee and thereby empowering him to file an action in his own name, did not, as a matter of law, create an attorney-client relationship between the assignor and the attorneys acting on behalf of the assignee."].)

As Fink had legal title to prosecute assigned collection claims in his own name, it logically follows that Business and Professions Code section 6125 provides that Fink could do so in propria persona.

We acknowledge the statement of decision's reliance on several confusing and inconsistent arguments that Fink has made in briefs filed in the trial court. Those arguments include the following: (1) in a document entitled "Plaintiff's Notice of Newly Discovered Authorities Directly on Point to June 27, 2011 Order," Fink stated, "[t]he assignment herein was not a 'collection only' assignment, as: (**1.** The assignment was absolute; and (**2.** The assignee purchased a half interest in the assignment"; (2) in a motion in limine, Fink stated, "[n]one of the evidence at trial relates to the Assignee. The assignee merely stands in the shoes of the assignor, and presents his case much like an attorney"; and (3) in an opposition brief, Fink stated, "[t]hink of an *assignment* as a *substitution of counsel* form, that gives a right to appear in Court. Think of an *assignment contract* as an *attorney client contract*; which is never filed in Court."

Our review of the record shows neither Fink nor defendants' counsel offered the trial court much, if any, real assistance in researching and analyzing the issue presented in this appeal, despite the trial court's repeated requests for further briefing on the subject. The above quoted statements of Fink, however, constitute argument, not evidence. Furthermore, as acknowledged by the trial court in the statement of decision, citing *Benninghoff v. Superior Court* (2006) 136 Cal.App.4th 61, 73 [38 Cal.Rptr.3d 759], "[t]he label that the assignor and assignee place on their relationship does not determine the nature of a legal relationship between David Fink and the Stone Center Corporation."

## DISPOSITION

The portion of the judgment granting judgment in favor of S&E is reversed. We remand to the trial court to determine whether the tentative decision it announced following the bench trial as to Fink's breach of contract claim against S&E will become the court's final decision and to thereafter proceed accordingly. The judgment is otherwise affirmed.

Each party prevailed in part in this appeal and the parties' briefs did not assist the court. Accordingly, in the interest of justice, neither party shall recover costs on appeal.

Aronson, Acting P. J., and Ikola, J., concurred.

A petition for a rehearing was denied October 24, 2012, and appellant's petition for review by the Supreme Court was denied January 3, 2013, S206332.