Filed 6/22/16  Woods v. Bank of America CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FLAVIANA WOODS, | D068024 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00096230-CU-OR-CTL) |
| BANK OF AMERICA, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Law Offices of Douglas Jaffe and Douglas Jaffe for Plaintiff and Appellant.

Bryan Cave and Aileen M. Hunter, Sarah Burwick for Defendant and Respondent.

Flaviana Woods (Woods) sued Bank of America, N.A. (BOA) to quiet title to real property on Tulip Street in San Diego, California (the Tulip Property).  In 2005, the Tulip Property was quitclaimed to Jose Ortega, who thereafter obtained a loan from BOA's predecessor, secured by the property.  Ortega defaulted, and the bank foreclosed.  At trial, Woods argued she never intended to transfer the Tulip Property to Ortega and that the

quitclaim deed (2005 Deed) purporting to transfer title was a forgery. BOA moved for nonsuit. The trial court treated BOA's motion as a motion for judgment under Code of Civil Procedure[1] section 631.8 and granted it.

On appeal, Woods argues: (1) the trial court erred in converting BOA's nonsuit motion into a motion for judgment; (2) substantial evidence does not support the court's finding that Woods's signature on the 2005 Deed was not forged; and (3) the court failed to consider Woods's contention that she never intended to transfer the Tulip Property to Ortega. We conclude the trial court did not err in granting BOA's motion pursuant to section 631.8, and substantial evidence supports its findings and entry of judgment in BOA's favor.

FACTUAL AND PROCEDURAL BACKGROUND

Woods has lived at the Tulip Property since 1968. Over the years, she and her husband acquired nine properties around San Diego. When her husband died in 1993, Woods became the sole owner of those properties. She began borrowing against the Tulip Property after her husband died. In 2005, Woods owed $124,000 to Ocwen Financial on a mortgage taken out against the Tulip Property.

In 2001, Woods sold one of her properties, the Newton Property, to Ortega. She also sold the Keeler Property to Ortega, in 2002. Although the deed denoted the transfer as a "gift," Ortega paid Woods $200,000 for the Keeler Property and promised to pay the

---

[1] Further statutory references are to the Code of Civil Procedure, unless otherwise specified.

balance of $127,000 within six months. Ortega did not pay the balance; instead, he agreed to pay off Woods's mortgage and taxes owing on the Tulip Property.

On June 3, 2005, the 2005 Deed was filed purporting to "gift" Woods's interest in the Tulip Property to Ortega. Woods signed an affidavit of last deed two months later, confirming she transferred the Tulip Property to Ortega in June 2005. In July 2005, Woods received a payoff statement from Ocwen Financial, indicating her mortgage on the Tulip Property had been paid in full.

In 2007, Ortega and his wife (the Ortegas) borrowed $350,961 from Countrywide Bank, secured by the Tulip Property. The Ortegas stopped making payments on the loan in 2008. Fannie Mae purchased the Tulip Property at a trustee's sale in 2010. Woods claimed she only learned about the 2005 Deed when the sheriff tried to evict her from the Tulip Property in 2011.

Woods filed suit against Fannie Mae and the Ortegas. Her amended complaint, filed in October 2011, asserted eight causes of action: quiet title, declaratory relief, and injunctive relief against all defendants; fraud and negligent misrepresentation against the Ortegas; and negligence, Rosenthal Fair Debt Collection Practices Act violations, and intentional infliction of emotional distress against Fannie Mae. Woods alleged the 2005 Deed was a forgery and that she never intended to "gift" the Tulip Property to Ortega.

In 2012, the court sustained Fannie Mae's demurrer as to all causes of action except for the cause of action for quiet title. BOA acquired the Tulip Property from Fannie Mae and substituted as the defendant in Woods's lawsuit. The Ortegas defaulted.

3

In April 2014, the court held a two-day bench trial on the single remaining cause of action against BOA for quiet title. The court heard testimony from Woods, her son, her daughter, her daughter-in-law Raquel (the notary public for the 2005 Deed), and BOA's corporate representative.[2] At the close of Woods's case-in-chief, BOA moved for nonsuit. The trial court heard argument from both sides. After a short recess, the court announced it would construe BOA's motion as a motion for judgment pursuant to section 631.8 and granted the motion.

The court issued a statement of decision in June 2014. The court found Woods's testimony that she did not sign the 2005 deed or intend to "gift" the Tulip Property to Ortega not credible. By contrast, the court found Raquel's testimony that Woods signed the 2005 Deed in her presence to be credible. The court determined that Woods had no right, title, or interest in the Tulip Property, and, therefore, BOA was entitled to judgment. In March 2015, the court entered judgment in BOA's favor and entered a default judgment against the Ortegas in the amount of $449,866.54.

Woods timely appealed.

DISCUSSION

Woods argues the trial court committed reversible error by converting BOA's nonsuit motion into a motion for judgment. Woods also challenges the trial court's finding that the 2005 Deed was not forged and claims the court erred by failing to consider whether Woods intended to transfer her interest in the Tulip Property to Ortega.

_____

[2] To avoid repetition, we discuss the evidence in the discussion section.

4

As we explain, the court did not err in construing BOA's motion as a motion for judgment; substantial evidence supports the court's finding that the 2005 Deed was not forged; and the court properly considered, and rejected, Woods's alternative argument that she did not knowingly gift the property to Ortega.

I.

THE COURT PROPERLY CONSTRUED BOA'S MOTION UNDER SECTION 631.8

A party may move for judgment in its favor under section 631.8 after the opposing party has completed the presentation of its evidence. (§ 631.8, subd. (a).) The trial court, sitting as trier of fact, may weigh the evidence and order judgment in favor of the moving party. (*Ibid.*) The purpose of the statute is to dispense with the need for the defendant to produce evidence where the court is persuaded that the plaintiff has not sustained its burden of proof. (*Combs v. Skyriver Communications, Inc.* (2008) 159 Cal.App.4th 1242, 1262 (*Combs*).) The trial court weighs credibility of witnesses and evidence; the court may choose to believe some witnesses and not others. (*Ibid.*)

"In a nonjury trial, such as the one held in this case, a motion for nonsuit is no longer recognized; the correct motion is a motion for judgment under . . . section 631.8." (*Combs, supra,* 159 Cal.App.4th at p. 1262.) Both motions serve the same purpose: to dispense with the need for the defendant to produce evidence where a plaintiff has failed to sustain his or her burden of proof. (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 314 fn. 23.) Whereas section 631.8 (motion for judgment) permits a trial court to weigh the evidence presented, section 581c (motion for nonsuit) does not. (*Ritschel v. City of Fountain Valley* (2006) 137 Cal.App.4th 107, 115; *Lingenfelter v. County of Fresno*

(2007) 154 Cal.App.4th 198, 204.)  Nevertheless, to prevail on a nonsuit motion, a plaintiff must still demonstrate *substantial* evidence in the record in support of her claim; mere conjecture or nonsensical interpretations of evidence do not suffice.  (*Ibid.*; 7 Witkin, Summary of Cal. Law (10th ed. 2005) Constitutional Law, § 410.)

BOA moved for nonsuit following Woods's presentation of evidence.  The court construed the motion as a motion for judgment.  Woods argues this was error because the court did not afford Woods an opportunity to reopen her case, as provided for under section 631.8.  We disagree.

First, Woods forfeited her challenge by failing to object below.  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138 ["it is clearly unproductive to deprive a trial court of the opportunity to correct such a purported defect by allowing a litigant to raise the claimed error for the first time on appeal"].)  Woods did not object when the court stated it would construe BOA's motion as a motion for judgment.  Nor did she request to reopen her case or object when the court commented that Woods had not sought to reopen her case.

Second, BOA's defect in filing a nonsuit motion was one of form, not substance. (*Lucchesi v. Giannini & Uniack* (1984) 158 Cal.App.3d 777, 784 fn. 7, disapproved on other grounds in *Wilson & Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 824.)  Just as appellate courts routinely construe orders granting nonsuit motions as orders granting motions for judgment (*Commonwealth Memorial, Inc. v. Telophase Society of America* (1976) 63 Cal.App.3d 867, 869 fn. 1; *Jazayeri v. Mao, supra,* 174 Cal.App.4th at p. 314

6

fn. 23), there was no error in the trial court's decision to construe BOA's motion as a motion for judgment under section 631.8.

Third, Woods fails to show prejudice from not reopening her case. (See *National Farm Workers Service Center, Inc. v. M. Caratan, Inc.* (1983) 146 Cal.App.3d 796, 807-808 [any error under section 631.8 not prejudicial].) Woods did not have an absolute right to reopen her case under section 631.8. (*People v. Mobil Oil Co.* (1983) 143 Cal.App.3d 261, 272.) Instead, she could have offered additional evidence solely for purposes of rebuttal or rehabilitation. (§ 631.8, subd. (a).) Neither below nor on appeal does Woods point to any such evidence she could have proffered. Woods argues on appeal that BOA's witness, A. Frank Hicks, testified at deposition he could not rule out the possibility that Woods's signature on the 2005 Deed was traced. However, Hicks's testimony would have had little probative value as rebuttal evidence, given that the trial court found credible Raquel's testimony that she "saw [Woods] sign" the 2005 Deed in her presence.

Thus, the court did not err in considering BOA's motion as a motion for judgment under section 631.8.

## II.

### SUSBTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S FINDING THAT THE 2005 DEED WAS NOT FORGED

We review the court's order under section 631.8 for substantial evidence. (*Fink v. Shemtov* (2012) 210 Cal.App.4th 599, 608.) "We will not reverse the trial court's order granting the motion if its findings are supported by substantial evidence, even if other

7

evidence in the record conflicts." (*Combs, supra,* 159 Cal.App.4th at p. 1263.) We view the record in the light most favorable to the judgment and make all reasonable inferences in favor of the prevailing party. (*Ibid.*)

Woods challenges the court's finding that the 2005 Deed was not forged. We conclude substantial evidence supports that finding.

Woods testified at one point she signed the "S" of her middle initial "like a worm" and not in cursive, like the "S" on the 2005 Deed. However, on cross examination, she conceded she signed her bankruptcy papers with a cursive "S," and she later admitted the signature on the 2005 Deed *could* be hers. At deposition, she identified the signature on the Newton Property deed as hers; at trial, she testified her signature was "never like that." When asked to identify another signature, Woods responded, "I got too many signatures that I don't even know." In light of these multiple inconsistencies, the trial court found Woods's testimony "so contradictory that it was simply not credible."

By contrast, the trial court credited Raquel's testimony. Raquel testified unequivocally at trial that she saw Woods sign the 2005 Deed in front of her. Raquel identified her signature and notary seal on the 2005 Deed and denied having given her stamp or notary journal to any other person. When asked if she had any doubt Woods was the person sitting in front of her signing the 2005 Deed, Raquel replied she had "no doubt" and "kn[e]w who she was."

Credibility determinations lie within the province of the trial court; our inquiry begins and ends with whether there is any substantial evidence, contradicted or uncontradicted, to support the trial court's findings. (*Estate of Teel* (1944) 25 Cal.2d 520,

8

526; *In re I.J.* (2013) 56 Cal.4th 766, 773.) Raquel's testimony, which the court found credible, constitutes substantial evidence supporting the court's finding that Woods's signature on the 2005 Deed was not forged. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [testimony of a single witness may suffice].)

Woods attempts to challenge Raquel's trial testimony by cherry-picking from the record. Woods points to Raquel's deposition testimony that she: did not believe the notary page for the 2005 Deed was taken from her notary journal; never notarized a document for Ortega; could not recall where the notarization of the 2005 Deed took place; and believed her husband (and Woods's son), Tyrone Woods, was present during notarization, whereas Tyrone testified he was not present. Woods also points to Raquel's trial testimony that she could not recall what she notarized in 2005. Woods's citations are unavailing. "The issue is not whether there is evidence in the record to support a different finding, but whether there is some evidence that, if believed, would support the findings of the trier of fact." (*Fariba v. Dealer Services Corp.* (2009) 178 Cal.App.4th 156, 170-171.) Raquel's unequivocal testimony at trial that she witnessed Woods, her future mother-in-law, sign the 2005 Deed in front of her meets that standard.[3]

We reject Woods's argument that the trial court improperly allowed BOA to use leading questions to examine Raquel. Woods's counsel objected to only one question towards the end of BOA's questioning on grounds it was leading, and her counsel did not

---

[3] Woods's selective citations ignore Raquel's trial testimony that upon closer inspection, she did believe the record of the 2005 Deed was copied from her notary journal, and she specifically remembered notarizing the 2005 Deed for Woods.

9

object to any of the questions prompting Raquel's testimony that she saw Woods sign the 2005 Deed. By failing to object before the trial court, Woods forfeited the argument on appeal. (Evid. Code, § 353, subd. (a); see *Dowd v. Dowd* (1952) 111 Cal.App.2d 760, 762 [absent objection that testimony was obtained through leading questions, "the evidence became and is competent"].)

We also reject Woods's argument that the trial court should have disregarded Raquel's testimony because in notarizing the 2005 Deed, she did not obtain Woods's thumbprint. Woods is correct that Raquel was required to record Woods's thumbprint in her notary journal. (Gov. Code, § 8206, subd. (a)(2)(G).)[4] The absence of a thumbprint in Raquel's journal provided *some* circumstantial support for Woods's claim that the 2005 Deed was forged. (See *Williams v. Kidd* (1915) 170 Cal. 631, 648-649 [notary's failure to record deed in his journal, as required by statute then in effect, could be considered in evaluating whether deed had been effectively delivered].) The trial court's refusal to consider the lack of a thumbprint in Raquel's notary journal was error.[5] However, we

---

[4]     The thumbprint requirement was instituted to stem the "growing problem of falsified loan documents" and forgeries; the Assembly Judiciary Committee expressed concern that real estate documents were being "recorded with forged signatures and false notarizations without the property owner's knowledge or consent." (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 1828 (1995-1996 Reg. Sess.) May 3, 1995, p. 1.) The Legislature created an anti-fraud pilot program in 1992 requiring a thumbprint for quitclaim deeds affecting real property in Los Angeles County. (*Ibid.*; Stats. 1992, ch. 815, § 2.) The Legislature extended the thumbprint requirement statewide in 1995. (Stats. 1995, ch. 569, § 1.)

[5]     The trial court concluded a thumbprint was only required as "alternative proof" of execution in certain cases and that it was not required here because the 2005 Deed was acknowledged. To the contrary, section 8206, subdivision (a)(2)(G) of the Government

conclude the error was harmless: Raquel testified that Woods signed the 2005 Deed in her presence, and the trial court found that testimony credible.

*Kirk Corp. v. First American Title Co.* (1990) 220 Cal.App.3d 785 is instructive. The plaintiffs in that case sued a notary public for negligence, alleging they did not sign a document cancelling their commercial lease. Although their signatures appeared on the notarized document, they pointed to the notary's failure to record the cancellation in her sequential journal. (*Id.* at pp. 811-812.) The court rejected the plaintiffs' theory. While noting that the notary's failure to maintain a record in her sequential journal violated her statutory obligations, the court held that substantial evidence supported the trial court's finding that the plaintiffs signed the document in question. The court pointed to the notary's testimony, which the trial court found credible, that she knew the plaintiffs personally and saw them sign the document in front of her. (*Ibid.*) Likewise, here, the trial court was entitled to credit Raquel's testimony that she saw Woods sign the 2005 Deed in her presence, irrespective of her failure to obtain a thumbprint from Woods for her notary journal.

Contrary to Woods's argument, Raquel's failure to comply with her statutory obligations did not render her incompetent to testify as to matters within her personal knowledge. "*Except otherwise provided by statute*, every person, irrespective of age, is qualified to be a witness and no person is disqualified to testify to any matter." (Evid. Code, § 700, italics added.) Nothing in section 8206 of the Government Code suggests

Code, which was effective at the time of execution of the 2005 Deed, requires a notary public's sequential journal to contain a thumbprint of the person whose signature on the quitclaim deed was notarized, regardless of whether the deed was acknowledged.

11

Raquel was rendered incompetent to testify by her failure to obtain Woods's thumbprint.[6]

Likewise, nothing in the record suggests that Raquel did not understand her duty to tell the truth or lacked the capacity to communicate. (Evid. Code, § 701, subd. (a).)

In short, substantial evidence supports the trial court's finding that the 2005 Deed was not forged.

III.

THE COURT PROPERLY CONSIDERED, AND REJECTED, WOODS'S THEORY SHE DID NOT INTEND TO GIFT THE TULIP PROPERTY TO ORTEGA

Woods argues the trial court committed reversible error by failing to consider her argument that, even if she signed the 2005 Deed, she did not intend to transfer the Tulip Property to Ortega. The contention lacks merit. The court's statement of decision explicitly considered that theory, devoting an entire section to assess its merits and finding Woods's evidence lacking in credibility. We conclude substantial evidence supports the trial court's ruling.

Woods used the words "give" and "sell" interchangeably. Woods testified she "gave" the Newton Property to Ortega, when she sold it to him for $32,000. The deed for the Keeler Property states the transfer was a "gift," but Woods testified Ortega paid her

---

6      The Secretary of State appoints and commissions notaries public. (Gov. Code, § 8200.) A notary's failure to comply with statutory requirements can result in civil penalties (Gov. Code, § 8214.23) or revocation or suspension of the notary's commission (Gov. Code, § 8214.1). In addition, the notary may be held liable in a civil action for damages proximately caused by willful or negligent performance. (Gov. Code, § 8214; *McComber v. Wells* (1999) 72 Cal.App.4th 512, 519-520; see Evid. Code, § 669, subd. (a) [statutory violations create a presumption of negligence per se].) Woods does not cite any statutory or case authority, and our independent research reveals none, indicating that a notary's failure to comply with statutory requirements renders the notary incompetent to testify as a witness.

12

$200,000 and owed her an additional $127,000. Woods owned nine commercial and residential properties and had repeat transactions with Ortega. She *knew* Ortega had borrowed against the Tulip Property to pay her mortgage, outstanding taxes, and insurance, and she conceded having received a payoff notice indicating her mortgage had been paid. She recalled receiving water bills a "long time ago" addressed to the Ortegas; at the time, she was told she could not transfer the bill to her name unless she could show the Tulip Property belonged to her. In August 2005, Woods signed an affidavit *confirming* she executed the 2005 Deed and delivered it to Ortega. In light of this evidence, the trial court determined Woods's testimony she never intended to "gift" the property to Ortega lacked credibility.

After BOA moved for nonsuit, the court asked Woods's counsel, "what evidence would support an inference or indication that when [Woods] signed the document, she believed it was something else?" Woods's counsel pointed to no *evidence* to support that theory and instead repeated that Woods's theory was that her signature on the 2005 Deed was forged. When Woods was asked on cross-examination whether she signed the 2005 Deed not knowing what it was, she responded that she would never have signed the deed. The only *evidence* Woods presented to support her theory that she did not knowingly transfer the Tulip Property to Ortega was her own testimony that she never would have given the property to him—evidence the trial court found was not credible. We do not disturb the trial court's credibility determinations on appeal. (*Estate of Teel, supra,* 25 Cal.2d at p. 526; *In re I.J., supra,* 56 Cal.4th at p. 773.)

13

Woods argues she never received consideration to transfer the Tulip Property to Ortega. She contends her use of the word "gift" to describe the sale of the Keeler Property did not impact her testimony regarding the Tulip Property. We disagree. First, Woods testified that Ortega agreed to pay off her mortgage, insurance, and outstanding taxes on the Tulip Property, suggesting there was consideration for the transfer. Second, the trial court found Woods's credibility *was* impacted by her interchangeable use of the words "gift" and "sale" to describe other property transactions with Ortega. The court found that because Woods received monies in exchange for other properties "gifted" to Ortega, her testimony that she never would have gifted the Tulip Property to Ortega lacked credibility. In other words, the court impliedly found Woods *did* receive consideration for the Tulip Property, based on her testimony that she received money for other properties she claimed to have "gifted" to Ortega and received a payoff of her mortgage from Ocwen Financial.[7]

Woods also points to Ortega's default, arguing his failure to answer resulted in his admission of allegations against him in the amended complaint. As the trial court concluded, such admissions would not be binding against Ortega's *co-defendant*, BOA. (*Western Heritage Ins. Co. v. Superior Court* (2011) 199 Cal.App.4th 1196, 1211 [" ' "It

---

[7]  "It is axiomatic it is the appellant's responsibility to provide an adequate record on appeal." (*Lincoln Fountain Villas Homeowners Assn. v. State Farm Fire & Casualty Ins. Co.* (2006) 136 Cal.App.4th 999, 1003 fn. 1.) Because the record on appeal does not indicate that Woods objected to any omissions or ambiguities in the court's June 2014 statement of decision, we imply all factual findings necessary to support the judgment. (*In re Marriage of Arceneaux, supra,* 51 Cal.3d at p. 1136; *SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462.)

14

is an established principle of law that admissions implied from the default of one defendant ordinarily are not binding upon a codefendant who, by answering, expressly denies and places in issue the truth of the allegations thus admitted by the absent party." ' "].)

In short, the trial court adequately considered, and properly rejected, Woods's contention she did not knowingly transfer the Tulip Property to Ortega. Woods did not provide *credible* evidence to support that theory.

DISPOSITION

The judgment is affirmed. In the interest of justice, each side shall bear its own costs on appeal.

15

                                                                    IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.